COMMONWEALTH of Pennsylvania

v.

Angel SOTO, Appellant. (Two Cases).

Superior Court of Pennsylvania.

Submitted March 3, 1997.

Filed April 24, 1997.

Norris E. Gelman, Philadelphia, for appellant.

John M. Morganelli, District Attorney, Easton, for Com., appellee.

Before McEWEN, President Judge, and SCHILLER and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In early November of 1988, Angel Soto a/k/a Chino (Soto) and his cousin Luis Torres (Popo) savagely killed Nepomuceno Pacheco (Nepo). The murder, planned and openly discussed for at least one week prior to the actual execution, resulted from a drug dealing dispute. After the duo lured the victim to a desolate quarry, Popo shot Nepo five times throughout the body area. Apparently unsatisfied that these wounds would prove fatal, but out of ammunition, Soto and Popo quickly fled to an acquaintance's home approximately one mile away to procure more bullets for the murder weapon. This accomplished, the cohorts returned to the scene of the crime, after which Soto shot Nepo three times in the head and then fled the jurisdiction.

Approximately sixteen months later, in March of 1989, Soto was apprehended by the FBI in New Jersey and returned to Northampton County to face charges of criminal homicide and conspiracy. On June 19, 1991,

after a five-day jury trial, Soto was found guilty of first-degree murder and criminal conspiracy. On that same day, following the sentencing phase of the trial, the jury recommended a sentence of life imprisonment for the murder conviction. Appellant was sentenced to an additional, consecutive, term of five-to-ten years imprisonment for the conspiracy conviction.[1]

Post-trial motions were filed by appellant's trial attorneys, Renald S. Baratta and Leonard M. Mellon. On the date scheduled for post-trial argument, trial counsel were permitted to withdraw their appearances and F. Michael Medway, Esquire, entered his appearance as private counsel on appellant's behalf. Supplemental post-trial motions were filed, raising twenty-four instances of alleged trial error. Following an evidentiary hearing confined to those issues challenging trial counsels' representation, appellant's motions were denied. A seventy-two page opinion was issued along with the court order denying the motions.

A timely appeal was then taken to this Court. After reviewing appellant's statement of matters complained of on appeal, filed pursuant to Pa.R.A.P.1925(b), the court issued its seventy-two page denial of appellant's post-trial motions as its Pa.R.A.P. 1925(a) opinion. Thereafter, Attorney Medway withdrew as counsel and present counsel, Norris E. Gelman, Esquire, was retained on appellant's behalf.

On appeal, present counsel expressly abandons twenty-three of the twenty-four issues identified as error by trial and post-trial counsel and addressed by the trial court in its opinion. In addition to the one issue retained, counsel raises four issues which challenge the accuracy of certain jury instructions and allege that prior counsel were ineffective for failing to raise and/or preserve the issues.

■ As all of appellant's present issues challenge the effective representation of some or all prior counsel, we will address the standard of review to be applied to all of the ineffectiveness claims at the outset. In order to prevail, appellant must demonstrate that the claim is of arguable merit, that counsel's action or omission had no reasonable basis designed to effectuate appellant's interests and that counsel's faulty stewardship prejudiced appellant. *See, e.g., Commonwealth v. Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996); *Commonwealth v. Lam,* 453 Pa.Super. 497, 507–09, 684 A.2d 153, 158 (1996). A presumption of effectiveness exists, so the burden of establishing ineffectiveness lies solely with appellant. *Jones,* 546 Pa. at 175, 683 A.2d at 1188.

■ Appellant's initial argument avers that trial counsel were ineffective for permitting the jury to be instructed that appellant could be found guilty of murder either as a principal or as an accomplice. More specifically, appellant contends that, although sufficient evidence was adduced to prove his culpability as an accomplice, the evidence was legally insufficient to prove his guilt as a principal actor. Therefore, appellant argues, because his conduct cannot be termed a direct and substantial cause of the victim's death, the jury instruction was fundamentally flawed.

■ When reviewing challenges to the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the Commonwealth, as verdict winner, and determine whether sufficient evidence was proffered to prove each element of the crime beyond a reasonable doubt. This standard applies equally to both direct and circumstantial evidence, provided that the culmination of the evidence is sufficient to prove guilt beyond a reasonable doubt. *See, e.g., Commonwealth v. Cox,* 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996); *Commonwealth v. Murphy,* 540 Pa. 318, 323–25, 657 A.2d 927, 930 (1995).

In support of his argument that the evidence was legally insufficient to prove his guilt as a principal actor, appellant offers the testimony of Dr. Isadore Mihalakis, who testified as an expert witness for the Commonwealth. Dr. Mihalakis stated unequivocally that the five body wounds suffered by the

---

1. On September 17, 1990, appellant's cousin and co-conspirator, Popo, pled guilty to third-degree murder and criminal conspiracy in connection with this killing.

victim were inflicted prior to the three head wounds and that at least two of the five body wounds were lethal independent of the later-inflicted head wounds. When asked, in his expert opinion, whether the victim was alive at the time the last three bullets were fired, Dr. Mihalakis testified that "he was either in profound shock [or] at or near death's door when he suffered these." N.T. 6–17–91 at 99. Additionally, Dr. Mihalakis testified that the facial wounds were inflicted at a range of just inches from the victim's head and were independently lethal. *Id.*

Based upon this testimony, appellant argues that, depending on the time differential between the first and second set of shots, appellant either shot a dead body or a victim who was so near to death that the later wounds could not legally be a substantial and direct cause of death.

The first of these assertions is factually meritless. Dr. Mihalakis testified that if the facial wounds "were suffered within about a 15–minute time period then while he may have been in profound shock, he was still very much alive." *Id.* Further, the doctor testified that there was some hemorrhaging about these wounds, which is "consistent with someone who is alive but is at death's door and is in profound shock." *Id.* at 102. With respect to the approximately 15–minute time frame estimated by Dr. Mihalakis, the Commonwealth produced evidence proving that the home where appellant fled to get more ammunition was less than one mile from the crime scene and that appellant was hurried and agitated while inside the home. N.T. 6–14–91 at 158.

Taken together, this evidence was sufficient for the jury, as fact-finders, to conclude that the victim was alive at the time appellant fired the final three bullets into him.

█ We are therefore left to consider appellant's argument that, even if the victim was alive when the final three wounds were inflicted, he was so close to death that appellant's actions were not a substantial factor in contribution thereto. Essentially, appellant avers that the overriding cause of death was the initial barrage of shots fired by his cousin, Popo, and that liability as a principal actor

cannot be premised upon his subsequent actions.

█ In order for an act to be a direct cause of death, it must be a substantial, although not the sole, cause of the death. Criminal liability as a principal actor may attach provided that the defendant's actions in bringing about the victim's death were not overridden by an independent, overriding, factor. *See, e.g., Commonwealth v. Paolello,* 542 Pa. 47, 73–75, 665 A.2d 439, 453 (1995). Moreover, "an accused may not escape criminal liability on the ground that, prior to the criminal act, his victim was not in perfect health." *Id.* (quoting *Commonwealth v. Hicks,* 466 Pa. 499, 505, 353 A.2d 803, 805 (1976)).

Applied to the instant case, it is evident that, although the victim's very life-blood was seeping out of him and his pulse and breathing were strained, he was **alive** when appellant shot him three times in the face at close range. Appellant's argument that he is somehow less culpable because the victim was doomed to death at the time appellant shot him is specious and outlandish. To accept this argument, this Court would have to hold that either appellant or his cousin, but not both, was the principal killer. However, when faced with facts that prove that both men inflicted a total of eight fatal wounds to the victim within a very short time frame, it would belie reality and justice to allow one man to escape unscathed and unaccountable for his actions.

We therefore hold that sufficient evidence was adduced from which the jury could convict appellant either as a principal or an accomplice actor. It follows, then, that any challenge to such a jury instruction during trial would have been without arguable merit and that prior counsel cannot be deemed ineffective for allowing the charge to be so submitted.

Additionally, we note that, because appellant was convicted of criminal conspiracy, he would be legally responsible for the actions of his cousin/co-conspirator even if appellant did not personally fire any of the shots that killed the victim. *See, e.g., Commonwealth v. Iannelli,* 430 Pa.Super. 402, 429–31, 634 A.2d 1120, 1134 (1993) (a co-conspirator is crimi-

nally responsible for the acts of his co-conspirators which are taken in furtherance of the criminal objective).

■ Moreover, the jury's verdict of guilt as to the conspiracy charge necessarily mandates a finding that appellant, at a minimum, was an accomplice to the murder; a fact which appellant concedes. This is so because the substantive crime of criminal conspiracy encompasses that of accomplice liability with conspiracy having the additional element of an agreement. *See, e.g., Commonwealth v. Allen,* 425 Pa.Super. 615, 617–19, 625 A.2d 1266, 1268 (1993) (a finding of conspiracy *a fortiori* entails a finding of accomplice liability). Therefore, assuming *arguendo* that the evidence introduced at trial was insufficient to prove that appellant acted as a principal, it does not follow, as appellant suggests, that his first-degree murder conviction was improper in any manner.

For the foregoing reasons, we hold that prior counsel were not ineffective in failing to challenge and/or preserve for review the issue of whether the jury instruction relative to criminal liability was proper.

■ Next, appellant contends that trial counsel were ineffective for failing to object to the court's jury instruction relative to the cause of death. More precisely, appellant avers that the charge removed from the jury's consideration the question of whether appellant's actions were a direct and substantial factor in bringing about the victim's death. Appellant concedes that this argument is only applicable "if some of the members of the jury rejected the Commonwealth's accomplice theory, and utilized the theory which made Appellant a principal to convict." Appellant's brief at 23.

As to the cause of death issue, the court stated that "there was testimony here that the cause of death were the gunshot wounds." N.T. 6–19–91 at 536. Appellant claims that this instruction worked to negate appellant's most significant defense; that he shot the victim when the victim was already dead and, thus, could not be guilty of murder.

Appellant presented an alibi defense at trial which included the testimony of his cousin, Popo, that appellant was not involved in the planning or execution of the victim. Therefore, it is patently false to assert that appellant's best defense at trial was that he shot a man that was already dead. That said, we note that the court's instruction merely recited that the victim died of gunshot wounds, a fact which has never been contested. At no point did the court speculate as to whether the first, second or both rounds of gunfire killed the victim. Therefore, contrary to appellant's assertion, the instruction left the jury free to deliberate and conclude that the victim expired prior to appellant's second barrage of shots.

Finally, as previously stated, the jury's finding that appellant and his cousin were co-conspirators necessarily entails a finding that appellant was an accomplice in the murder. That is, at a minimum, the jury determined that appellant aided and abetted his cousin in the slaying. We therefore agree with appellant that, because the jury necessarily found accomplice liability, his second issue of ineffectiveness is of no merit.

■ In his third issue, appellant challenges the propriety of the jury instruction relative to voluntary manslaughter. Specifically, appellant avers that the instruction shifted the burden of proof to appellant and, as a consequence, diluted the value of the presumption of innocence afforded all criminal defendants.

■ When reviewing a trial court's jury instructions, this Court must consider the instructions as a whole in order to determine whether the charge accurately and clearly conveyed the applicable law to the panel. There are no magic, talismanic, words which must be uttered in order for a charge to pass muster. Rather, this Court must read the charge in its entirety with an eye towards assessing the overall accuracy and clarity of the instructions. *See, e.g., Commonwealth v. Persichini,* 444 Pa.Super. 110, 119–20, 663 A.2d 699, 703 (1995); *Commonwealth v. Zewe,* 444 Pa.Super. 17, 28–30, 663 A.2d 195, 201 (1995).

■ In the instant matter, the voluntary manslaughter instruction read to the

jury was almost verbatim to standard jury instruction 15.2503A. It is well-established that the standard jury instructions are merely guides to aid trial judges. Nevertheless, even though a trial judge may elect to deviate entirely from the proposed language, the standard instructions are helpful in ascertaining whether a questioned charge was warranted and proper. *See, e.g., Commonwealth v. Morningwake,* 407 Pa.Super. 129, 138–40, 595 A.2d 158, 163 (1991); *Commonwealth v. Diehl,* 402 Pa.Super. 12, 19–21, 585 A.2d 1112, 1116 (1991).

After explaining that a killing resultant from sudden, intense, passion or serious provocation cannot be malicious murder, the court stated that "[i]n order to find that the Defendant is guilty of voluntary manslaughter, you would have to be convinced beyond a reasonable doubt by the evidence that there was no malice." N.T. 6–19–91 at 532. This portion of the charge deviated from the standard charge in that the standard charge reads as follows: "If you do not find the defendant had malice and committed murder, you may find him guilty of voluntary manslaughter."

Our task, therefore, is to determine whether the charge, as given, accurately conveys the sentiments ensconced in the standard charge. After careful review, we find no support for appellant's contention that the charge, as given, shifted the burden of proof to the defendant in violation of his rights. Rather, the challenged portion of the charge conveyed to the jury the essential distinction between murder and manslaughter; namely, the presence or absence of malice.

Further, reading the charge as a whole, as we are duty-bound to do, reveals that the trial court correctly placed the burden of proof squarely with the Commonwealth. When discussing with the jury the presumptive shroud of innocence afforded to all criminal defendants, the trial judge stated, *inter alia,* "[i]t is not the Defendant's burden to prove himself not guilty. Instead, the Commonwealth always has the burden of proving each and every element of the crime charged and that the Defendant is guilty of that crime beyond a reasonable doubt." N.T. 6–19–91 at 541–42. *See also id.* at 543–47.

Had the judge instructed the jury that the **defendant** was required to negate an inference of malice or prove beyond a reasonable doubt that there was no malice, appellant would have a more convincing argument. That, however, is not the case.[2] We therefore hold that prior counsel were not ineffective for failing to object to the voluntary manslaughter charge at trial and/or through post-trial motions.

▇ Appellant's penultimate issue questions whether trial counsel were ineffective for failing to object to the court's jury instruction relative to the alibi evidence presented by appellant at trial. Specifically, appellant contends that the trial court failed to inform the jury that disbelief of the alibi "in whole or in part" could not be used as proof of guilt. As our standard of review has already been discussed relative to appellant's previous claim, we will proceed directly to the substantive merits of this issue.

In *toto,* the alibi instruction given by the court reads:

Obviously the Defendant cannot be guilty unless he was at the scene of the alleged crime when this occurred.

The Defendant has offered evidence that he was not present at the crime but rather elsewhere at the time the crime was committed. You should consider this evidence along with all the other evidence in this case in determining whether the Commonwealth has met its burden of proof beyond a reasonable doubt that the crime was committed and that the Defendant himself

---

2. We find the Commonwealth's reliance on *Commonwealth v. Haynes,* 395 Pa.Super. 322, 577 A.2d 564 (1990), and *Commonwealth v. Mays,* 361 Pa.Super. 554, 523 A.2d 357 (1987), to be misplaced. In both *Haynes* and *Mays,* this Court held that, when the jury elected not to exercise its mercy dispensing power and instead returned a verdict finding the defendant guilty of a higher degree of murder than the lowest degree

charged, it was not error for the court to **refuse** to charge on voluntary manslaughter. The essential difference in the present case is that the court did, in fact, include a voluntary manslaughter instruction in its charge. This is an important distinction; while the absence of an instruction could well be harmless error, the presence of an erroneous instruction could well be harmful error.

either committed it or took part in committing it or was an accomplice to the commission.

The Defendant's evidence that he was not present either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt in your minds. If you have a reasonable doubt of the Defendant's guilt, you must find him not guilty.

N.T. 6–19–91 at 553.

Our review of this allegedly defective instruction reveals that, in harmony with prior caselaw, the instruction served to inform "the jury that the alibi evidence, either by itself or together with other evidence, could raise a reasonable doubt as to the defendant's guilt." *Commonwealth v. Saunders*, 529 Pa. 140, 145, 602 A.2d 816, 818 (1992) (while an alibi instruction containing the express language "even if not wholly believed" may be proper, it is not a necessary pre-requisite to a finding that a charge was accurate and proper). We reiterate that jury instructions are not *per se* proper or improper merely because they either comport or deviate from a specific blueprint of talismanic words. It is the overall effect of the charge, its clarity and accuracy, that is controlling.

Therefore, because the alibi charge given by the court accurately conveyed the applicable points of law, we hold that appellant's ineffectiveness claim as to this issue must fail.

 In his final issue, appellant claims that prior counsel were ineffective for failing to object to that portion of the jury charge relating to reasonable doubt. As with appellant's prior issues, we find his proffer to be insufficient and, thus, hold that appellant is entitled to no relief.

As appellant admits, the jury charge, in its entirety, "was a standard one, in complete accord with case law." Appellant's brief at 33. Nonetheless, appellant asserts that the failure of trial counsel to strenuously object to the final summation of the concept of reasonable doubt "could epitomize ineffectiveness of counsel." *Id.* at 35.

After outlining for the jury the legal, sometimes amorphous, concept of reasonable doubt, the trial judge stated: "To summarize, you may not find the Defendant guilty based on mere speculation of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt."

Appellant contends that this instruction was improper and violative of his sixth and fourteenth amendment rights because the jury should have been instructed that appellant could not be found guilty based upon sufficient evidence to prove a preponderance, probability or clear and convincing evidence of guilt; *i.e.,* any quantum of proof less than beyond a reasonable doubt. The "mere suspicion" language adopted verbatim from standard jury instruction 7.01, appellant argues, is too heavily weighted in the Commonwealth's favor.

Appellant is simply incorrect. As the Commonwealth concisely points out in its Spartan, ink-deprived, three-sentence argument on this issue, this Court expressly approved the exact reasonable doubt charge given in the instant case in *Commonwealth v. Dykes*, 373 Pa.Super. 258, 264–66, 541 A.2d 1, 4 (1988). Even absent the precedent established in *Dykes*, we would be wary of agreeing with appellant that the court's charge was erroneous and misleading. Again, we are required to review a charge in its entirety, and the instant charge fully and accurately conveyed to the jury the oft-related definition of reasonable doubt ensconced in standard jury instruction 7.01 and embraced by our courts.[3]

---

**3.** The Commonwealth argues that appellant is not entitled to relief based upon any error in this portion of the charge because appellant later admitted that his alibi testimony at trial was fabricated. This argument is troublesome for several reasons. First, while it is true that at the post-trial motion hearing appellant admitted to purjuring himself at trial, appellant did not admit any culpability. Rather, appellant testified that he was with his brother, and not a girlfriend, on the evening in question. Secondly, in an effort to ascertain whether appellant received a fair trial as guaranteed by the constitution, the instant direct appeal is concerned with allegations of **trial** error. We are therefor loath to preclude review based upon testimony elicited three years following the adjudication of guilt.

Order affirmed. Judgment of sentence affirmed.

McEWEN, President Judge and SCHILLER, J., concur in the result.