J-A33023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THOMAS DANTZLER | |
| Appellee | No. 681 EDA 2014 |

Appeal from the Order Entered on January 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008351-2012

BEFORE: LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.: **FILED APRIL 17, 2015**

The Commonwealth appeals the trial court's January 28, 2014 order in which the trial court granted Thomas Dantzler's pre-trial "Defendant's Motion to Quash Information." We affirm.

The trial court summarized the initial procedural history of this case as follows:

> Dantzler and his co-defendant, Gelain Heard, were arrested on April 26, 2012, and charged with aggravated assault, criminal conspiracy, possessing the instruments of a crime, simple assault and recklessly endangering another person. A preliminary hearing was held in Philadelphia Municipal Court on July 14, 2012, wherein [Dantzler and Heard] were held over for trial on all charges.
>
> A petition for writ of *habeas corpus* was filed by Dantzler.[1] On January 28, 2014[,] a hearing was held at which time the

---

Commonwealth supplemented [its] case with additional evidence – the testimony of Detective [Glynn] MacClain.

Trial Court Opinion ("T.C.O."), 5/16/2014 at 1-2 (capitalization modified).

The trial court summarized the facts that were developed at Dantzler's preliminary hearing and at his pre-trial *habeas corpus* hearing, as follows:

> On the evening of March 27, 2012, Ms. Kim Amos was returning to her home on the 3500 block of Camac Street in the City and County of Philadelphia, when she saw [Dantzler] outside of her next door neighbors' house. Reginald Smith, one of her neighbors[,] was beating Dantzler with a club, while [Smith's girlfriend] Tiffany, who at the time resided with Reginald Smith, was tasing Dantzler. Ms. Amos called the police, who arrested the neighbors, Reginald Smith and Tiffany.
>
> A couple weeks later, on April 7, 2012, somewhere between 2 and 3 p.m., Ms. Amos testified that she was sitting in her car outside of her house when she saw [Dantzler] and co-defendant, Gelain Heard, walking down Camac Street. [Dantzler and Heard] stopped in front of Ms. Amos' house, at which time Ms. Amos rolled down the window of her car and told the men that "they had the wrong house." Ms. Amos observed Mr. Heard take a picture of her house, and [the men] continued down the street. The witness testified that the two men did not say anything, either to her or to each other, before leaving her street. A couple of blocks away, [Dantzler and Heard] got into a black Dodge Durango with [Dantzler] driving. Ms. Amos pulled her car next to the passenger side of the Durango and repeatedly told [] Heard "You have the wrong house." [Heard] told Ms. Amos "On everything I love, just don't be in the house tonight." Ms. Amos testified that [Dantzler] did not speak or engage with either her or [] Heard. Ms. Amos left to go shopping.

*(Footnote Continued)* ────────────

1    As noted above, Dantzler titled the petition "Defendant's Motion to Quash Information." Therein, Dantzler alleged that the Commonwealth failed to present a *prima facie* case against him at the preliminary hearing. Thus, the trial court correctly treated Dantzler's filing as a petition for a writ of *habeas corpus*. **See Commonwealth v. Morman**, 541 A.2d 356, 361-63 (Pa. Super. 1988).

About 5 p.m., Ms. Amos returned home. A short time later, Ms. Amos went to her front door and observed [Heard] by her steps. Mr. Heard was alone. [Heard] asked Ms. Amos if "this was the house," to which Ms. Amos replied "No," slammed her front door and went back to her kitchen. Approximately five minutes later, Ms. Amos could hear what she believed to be gunshots. The witness did not see [] Dantzler, or any indication that Dantzler was around at that time.

The parties stipulated that a security tape would reveal that shortly before 5 p.m. on April 7, 2012[,] a lone black male, in a black hoodie, got into a black Dodge Durango on 13th Street at Atlantic Avenue. This intersection is a couple of blocks from where the shooting took place. Additionally, Mr. Smith, the victim, testified that he was standing in his house on April 7, 2012[,] when he was shot, but that he did not see, and cannot identify the shooter.

The prosecution presented additional testimony at the *habeas* hearing, that of Detective MacClain. The detective had obtained a video showing a black male entering a black Dodge Durango at approximately 4:50 p.m. on April 7, 2012[,] a couple of blocks away from the shooting. There appeared to be marks on the hood of the vehicle. The detective testified that eighteen days later he went to an apartment complex on Lakeview Drive and photographed a black Dodge Durango in the parking lot. That vehicle had a rust spot on its hood. The detective testified that the Durango was owned by a female. On April 27, Detective MacClain returned to the apartment and arrested [Dantzler].

T.C.O. at 2-4 (citations to notes of testimony omitted).

After considering the above facts the trial court granted Dantzler's petition, and dismissed the charges against him. The Commonwealth filed a motion to reconsider, which the trial court denied. On February 27, 2014, the Commonwealth filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 16, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth presents one question for our review: "Did the lower court err in ruling that the evidence was insufficient for a *prima facie* case?" Brief for the Commonwealth at 4.

Our standard of review when reviewing a trial court's order granting a criminal defendant's pre-trial petition for a writ of *habeas corpus* requires us only to determine whether the trial court has abused its discretion. ***Commonwealth v. Carbo***, 822 A.2d 60, 63 (Pa. Super. 2003). To wit, "the record must disclose that the trial court exercised manifestly unreasonable judgment or based its decision on ill will, bias or prejudice." ***Id.*** (citing ***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002)). We are not permitted to reverse a trial court's decision simply because we would have reached a different conclusion than did the trial court.

> A petition for [a] writ of *habeas corpus* is the correct method for a defendant to test whether the Commonwealth has, before trial, established a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. In an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.
>
> Proof beyond a reasonable doubt is not required at the *habeas* stage, but the Commonwealth's evidence must be such that, if accepted as true, would justify a trial court in submitting the case to a jury. Additionally, in the course of deciding a *habeas* petition, a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth. Suspicion and conjecture, however, are unacceptable.

***Commonwealth v. Carroll***, 936 A.2d 1148, 1152-53 (Pa Super. 2007) (citations omitted).

- 4 -

The evidence of record in this matter undoubtedly makes this case a close-call. Nonetheless, even viewing the evidence in the light most favorable to the Commonwealth, *see Carroll*, *supra*, we conclude that the Commonwealth has not established a *prima facie* case against Dantzler. Even if reasonable minds might differ as to whether the Commonwealth met its burden, the evidence is not so compelling one way or another to conclude that the trial court exercised "manifestly unreasonable judgment," or that the court's judgment was based upon ill will, bias or prejudice. *Id.* The trial court was required to make a difficult decision, and we discern nothing about that decision that would constitute an abuse of discretion.

Dantzler was charged with aggravated assault, criminal conspiracy, possessing an instrument of crime, simple assault, and recklessly endangering another person. Because Dantzler was not the person who shot Smith, in order to prove Dantzler guilty of the substantive crimes, the Commonwealth had to demonstrate a *prima facie* case that Dantzler was a conspirator with Heard, the person who the Commonwealth alleged actually fired the weapon. *See Commonwealth v. Soto*, 693 A.2d 226, 229-30 (Pa. Super. 1997) (noting the fundamental precept that, even if a conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy). Thus, the central focus of this case is the conspiracy charge.

The Commonwealth must establish a *prima facie* case that the defendant entered into an agreement to commit or aid in an unlawful act with another person or person with a shared criminal intent and that one of the conspirators committed an overt act in furtherance of the conspiracy. 18 Pa.C.S. § 903. "The essence of a criminal conspiracy is the common understanding that a particular objective is to be accomplished." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citing ***Commonwealth v. Keefer***, 487 A.2d 915, 918 (Pa. Super. 1985)).

> **Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient**. ***Keefer***, 487 A.2d at 918. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.*, that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." [***Commonwealth v. Hennigan***, 753 A.2d 245, 253 (Pa. Super. 2000)]. The defendant does not need to commit the overt act; a co-conspirator may commit the overt act. ***Commonwealth v. Johnson***, 719 A.2d 778, 784 (Pa. Super. 1998) (*en banc*).
>
> A conspiracy is almost always proved through circumstantial evidence. ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1176 (Pa. Super. 1994). "The conduct of the parties and the circumstances surrounding their conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Johnson***, 719 A.2d at 785. The evidence must, however, "rise above mere suspicion or possibility of guilty collusion." ***Swerdlow***, 636 A.2d at 1177 (citation omitted).
>
> This Court has identified factors to be considered:
>
>> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence

> linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred. ***Commonwealth v. Carter***, 416 A.2d 523 (Pa. Super. 1979).

> ***Commonwealth v. Olds***, 469 A.2d 1072, 1075 (Pa. Super. 1983). ***See also Commonwealth v. Azim***, 459 A.2d 1244 (Pa. Super. 1983).

***Lambert***, 795 A.2d at 1016 (emphasis added; citations modified).

Here, the evidence falls short of a *prima facie* case of a conspiracy. Rather than creating a web of evidence implicating Dantzler in a conspiracy, the evidence merely puts Dantzler at the scene of the crime a few hours before the actual crimes occurred. Although Dantzler was in a vehicle with Heard, Dantzler did not say anything to anyone, including Heard. In fact, Heard took the picture of the house, communicated with Ms. Amos, and later arrived alone to shoot Mr. Smith. At best, the evidence established that Dantzler merely was present at the scene earlier in the day, was associated with Heard, and possibly knew of the crime that Heard was preparing to commit. Each of these factors, even in conjunction with each other, is insufficient to prove a conspiracy. ***See Keefer***, *supra*.

At best, the relevant facts establishes that Dantzler had a motive to commit a crime against Smith and Tiffany, and that he was seen with Heard a few hours before any such crimes were committed. Motive, as demonstrated from the above recitation of the applicable law, is not an element of conspiracy and does not establish any of the relevant considerations. Because one has a motive to commit a crime does not mean

that he necessarily agrees to commit a crime with another person who is in his presence. In other words, that Dantzler had a motive to commit the crimes is irrelevant to whether he was in a conspiracy. Moreover, it bears repeating that mere presence at the crime scene, association with the person who commits a crime, and even knowledge of the crime do not alone establish a conspiracy.

It is true that direct evidence is not required to prove a conspiracy. Circumstantial evidence alone may do so. **See Swerdlow**, *supra*. However, there actually must be some circumstantial evidence to establish the existence of an agreement and a shared intent. Like the dearth of direct evidence in this case, the Commonwealth also did not adduce sufficient circumstantial evidence to justify reversing the trial court. Conjecture and surmise are not tools that we may use to create a conspiracy. **See Carroll**, *supra*. To warrant reversal, a fact finder would have to speculate whether Dantzler's presence and association with Heard were happenstance or whether something more sinister was afoot. To conclude that a conspiracy existed, the jury would have to fabricate from whole cloth discussions and understandings between Dantzler and Heard that would have no support in the evidentiary record. We cannot construe every fact in its most illicit way, and we cannot condone asking a fact finder to create facts and to guess at what really happened as a legitimate method of proof.

Regardless, despite our conclusion that the evidence falls short of a *prima facie* case, our inquiry is not whether the trial court's conclusion is

right or wrong. We must assess whether the trial court abused its discretion, which is much more than just reaching a particular result in good faith. The Commonwealth has not demonstrated as much, and, because the trial court correctly concluded that the Commonwealth failed to meet its burden, even the low burden of a *prima facie* case, the trial court did not abuse its discretion.

Order affirmed.

Judge Lazarus joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015