**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MALCOLM JAMAR FULLER | |
| Appellant | No. 745 MDA 2015 |

Appeal from the Judgment of Sentence of November 13, 2012
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0000011-2012

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                     **FILED NOVEMBER 12, 2015**

Malcolm Fuller appeals, *nunc pro tunc*, the November 13, 2012 judgment of sentence, which was imposed after a jury convicted Fuller of three counts of robbery,[1] three counts of conspiracy to commit robbery,[2] one count of theft by unlawful taking,[3] one count of conspiracy to commit theft by unlawful taking, one count of receiving stolen property,[4] and one count of conspiracy to commit receiving stolen property. In this appeal, Fuller

---

[*]     Former Justice specially assigned to the Superior Court.

[1]     18 Pa.C.S. § 3701(a)(1)(ii), (iv)-(v).

[2]     18 Pa.C.S. § 903(a)(1).

[3]     18 Pa.C.S. § 3921(a).

[4]     18 Pa.C.S. § 3925(a).

challenges the sufficiency of the Commonwealth's evidence, as well as the weight assigned to that evidence by the jury. We deny Fuller's challenges, and we affirm the judgment of sentence.

On November 30, 2011, Julio Garcia was working at the Sabor Food Center in Reading, Pennsylvania, when his wife, Teresa Garcia, entered the store to have dinner with him. Just as they finished eating dinner, three masked men entered the store with knives. One man put a knife in Teresa Garcia's face and forced her to the floor, while another ran around the store's counter and held a knife at Julio Garcia's throat. A fourth individual remained outside of the store.

The three men inside of the store immediately began demanding to know where the store's money was located. Julio Garcia, who by this point also had been forced to the floor, opened the store's safe, but it was empty. Julio Garcia then told his assailants that the money was kept next to the cash registers in an envelope. The men grabbed the money, and fled the store. Julio Garcia then locked the store and contacted the authorities.

Teresa Garcia first believed that the man who held a knife to her face as a person known as "A.K.," who was a very close associate of Fuller. The pair was known in the community to be essentially inseparable. However, when she selected the perpetrator from a photo array, Teresa Garcia learned that she was wrong, and that "A.K." was not involved in the robbery in any way. The man she thought was "A.K." was Travis Thomas, the person she selected from the array.

On the day after the robbery, the police showed the Garcias a video that was retrieved from the store's surveillance camera. From the video, both Teresa and Julio Garcia identified Fuller, who they knew as "Marley," as the man who remained outside of the store during the robbery. Although Julio Garcia could not identify Fuller from a photo array, he did identify Fuller from a photograph at trial, as well as identifying him in person in open court. Nonetheless, Teresa Garcia knew, and could recognize, Fuller because she was a friend of Fuller's girlfriend. Fuller also was an occasional customer in the store. Based upon his visits to the store, Julio Garcia recognized Fuller from the backpack that he was wearing during the robbery as well as the way in which he walked, which Julio believed to be distinctive because of the sagged way in which Fuller wore his pants. Julio Garcia also was able to see a partial view of Fuller's face in the video.

After hearing the relevant testimony presented at trial and observing the surveillance video, the jury convicted Fuller of the above-listed crimes. On November 13, 2012, the trial court sentenced Fuller to an aggregate of five and one-half to fifteen years' imprisonment. Fuller filed a post-sentence motion, in which he asserted that the verdicts were against the weight of the evidence, and which the trial court denied on November 27, 2012. Fuller did not file a direct appeal.

On November 7, 2013, Fuller filed a *pro se* petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. After the appointment of counsel and an amended petition, the Commonwealth

agreed to Fuller's request for reinstatement of his direct appeal rights. Accordingly, on April 20, 2015, the PCRA court entered an order granting restoration of said rights.

On April 28, 2015, Fuller filed a notice of appeal. On May 1, 2015, the trial court directed Fuller to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Fuller timely filed a concise statement. On June 22, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Fuller raises the following four questions for our review:

Whether the trial court erred in denying [Fuller's] post-sentence motion challenging the weight of the evidence in that the identification was the product of guesswork?

Whether insufficient evidence was presented to convict [Fuller] of any of the charges against him insofar as the evidence presented consisted largely of inconsistent statements and an inaccurate description/identification of [Fuller]?

Whether insufficient evidence was presented to convict [Fuller] of robbery, 18 Pa.C.S. § 3701(a)(1)(ii), where there was no evidence that [Fuller] threatened another with or intentionally put another in fear of immediate serious bodily injury?

Whether insufficient evidence was presented to convict [Fuller] of robbery, 18 Pa.C.S. § 3701(a)(1)(iv) where there was no evidence that [Fuller] inflicted bodily injury upon another or threatened another with or intentionally put another in fear of immediate bodily injury?

Brief for Fuller at 5 (minor modifications for consistency).

Fuller's first issue is a challenge to the weight of the evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.

- 4 -

*Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005), (citing *Commonwealth v. Sullivan*, 820 A.2d 795, 805–06 (Pa. Super. 2003), (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751–752 (Pa. 2000))). The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*, 744 A.2d at 753 (citation omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Sullivan*, 820 A.2d at 806 (quoting *Commonwealth v. La*, 640 A.2d 1336, 1351 (Pa. Super. 1994)).

[This Court shall not undertake to reassess credibility of witnesses, as] it is well settled that we cannot substitute our judgment for that of the trier of fact. *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008). Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the [a]ppellant. *See Commonwealth v. Griscavage*, 517 A.2d 1256 (Pa. 1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial).

*Commonwealth v. Bozic*, 997 A.2d 1211, 1223-24 (Pa. Super. 2010) (citing *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009)) (citations modified). Because relief only will be granted where the facts and inferences of record disclose a palpable abuse of discretion by the trial court, a court's denial of a motion for a new trial based upon a challenge to the weight of the evidence is the least assailable of a court's rulings. *Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007) (citing *Commonwealth v. Keaton*, 729 A.2d 529, 540-41 (Pa. 1999)).

Herein, Fuller maintains that the verdicts were against the weight of the evidence because the jury's identification of him as the person who

stood outside of the store during the robbery was the product of "guesswork." Fuller contends that "there [was] no evidence that [Fuller] was properly identified as a participant in, or conspirator to, the crime in any way." Brief for Fuller at 11. Fuller argues that identifying him by his backpack was "weak," because the backpack had no distinguishing features that conclusively could have linked Fuller to that particular backpack. He also asserts that the way that he walks is not so unique as to serve as reliable identification evidence. Finally, Fuller points to Teresa Garcia's initial incorrect identification of "A.K." as a participant in the crime as proof that the identification evidence should not have been believed, and that the trial court abused its discretion in denying his post-sentence motion.

Even if we assume, *arguendo*, that Fuller is correct that these particular pieces of evidence should not be believed, Fuller still does not account for the remainder of the identification evidence proffered by the Commonwealth at trial. Teresa Garcia was able to identify Fuller because she was a friend of Fuller's girlfriend. She also identified Fuller from the surveillance video. Julio Garcia, although initially not able to identify Fuller from a police photo, identified Fuller from the video after observing a partial view of his face. Julio Garcia was able to identify Fuller from a picture presented to him a trial, as well as in person in open court.

The jury heard the testimony, observed the demeanor of the witnesses, and, perhaps most importantly, viewed the surveillance video.

The jury was free to credit the witnesses and evidence as it saw fit. There was ample evidence in the record, including a substantial amount that Fuller does not challenge, from which the jury could have found credible information identifying Fuller as the look-out member of the robbery quartet. The jury did so, and we discern nothing in the record that would warrant finding that the trial court abused its discretion in concluding that the jury's finding did not shock the court's conscience. This issue fails.

In his final three issues, Fuller challenges the sufficiency of the evidence. Our standard of review for such claims is well-settled.

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. We may not weigh the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.
>
> Lastly, the finder of fact may believe all, some or none of a witness's testimony.

***Commonwealth v. Priest***, 18 A.3d 1235, 1239 (Pa. Super. 2011) (citations omitted).

In his first sufficiency challenge, Fuller maintains that the identification evidence was insufficient as a matter of law to sustain the verdicts. However, his argument merely is a reiteration of his challenge to the weight of the evidence. Fuller argues that the identification evidence was "weak

and unreliable," required "speculation and guesswork" and "conjecture," and that "[i]t is baffling to understand how, in this case, a jury could find sufficient evidence to convict [Fuller] based upon the speculative identification evidence." Brief for Fuller at 13-15.

A factfinder's acceptance of some, but not all, testimony does not render the evidence insufficient. *Priest*, 18 A.3d at 1240. Any uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency. *See Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa. Super. 1983). Fuller's challenge to the identification testimony goes to its weight, not its sufficiency, and we will not usurp the role of the trial court as fact-finder by reweighing the evidence. *See Priest*, 18 A.3d at 1239; *Minnis*, 458 A.2d at 233.

Nonetheless, even if we consider the argument as a sufficiency challenge, Fuller still has not demonstrated that he is entitled to any form of relief. As noted earlier, we are bound to review the evidence in the light most favorable to the Commonwealth. Once more, Fuller attacks only certain pieces of the Commonwealth's case, *i.e.* Teresa Garcia's initial belief that, because she thought "A.K." was present, Fuller also must have been present. However, there was ample other evidence identifying Fuller as one of the actors, including in- and out-of-court identifications of Fuller. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to identify Fuller as one of the conspirators in the robbery beyond a reasonable doubt.

In his final two challenges, Fuller argues that the evidence was insufficient to support his robbery convictions. It is undisputed that Fuller was not one of the individuals who entered the store and actually perpetrated the robberies. Accordingly, Fuller focuses his attention upon the Commonwealth's proof of the elements of conspiracy. Fuller maintains that the Commonwealth did not prove that Fuller specifically intended to promote or facilitate the robberies. **See** Brief for Fuller at 18. We disagree.

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Rios**, 684 A.2d 1025, 1030 (Pa. 1996) (citing 18 Pa.C.S.A. § 903). This overt act need not be committed by the defendant; it need only be committed by a co-conspirator. **Commonwealth v. Johnson**, 719 A.2d 778, 784 (Pa. Super. 1998). Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy. **Commonwealth v. Soto**, 693 A.2d 226, 229-30 (Pa. Super. 1997).

Viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences derived therefrom, the evidence was sufficient to prove that Fuller was guilty of conspiracy to commit robbery. Fuller contends that the evidence demonstrated only that

he was present at the scene of the crime. As support, Fuller points out that the surveillance video did not show him either arriving or departing with the actual robbers. That may be true, but that does not mean that the remaining evidence was insufficient to prove him to be a conspirator. In other words, arriving or leaving together is not a prerequisite to a conspiracy.

Here, the evidence demonstrated that, on the day in question, three men entered the store and robbed the Garcias at knifepoint. While this was occurring, Fuller, identified as the fourth man by sufficient and competent evidence, served as the lookout man for the robbers. The entire robbery lasted mere minutes. However, Fuller never entered the store before or after. He only stood outside, and was at that post only for the duration of the robbery. He was not seen in that post before or after the robbery. It was entirely reasonable for the jury to conclude that, although he may not have had any direct contact with the robbers, he was there with them to serve as the lookout man. No other reasonable inference can be drawn from these facts.

The evidence was sufficient to identify Fuller, and to prove that he served as the lookout man for the robbers. Serving as a lookout man is certain evidence that Fuller shared a specific, criminal intent with his co-conspirators to rob the Garcias. Finally, there is no shortage of overt acts that were taken in furtherance of the conspiracy, including entering the store with masks and knives, holding the knives to the Garcias' faces and necks,

and Fuller actually serving as the lookout man. Fuller's sufficiency claims must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015