J-S48024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BENJAMIN MCARTHUR | : | |
| DEGRAFFINRIED, II | : | |
| | : | No. 682 EDA 2024 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered December 8, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003977-2022

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 31, 2025**

Appellant Benjamin McArthur Degraffinried, II appeals from the judgment of sentence imposed following his conviction for burglary and related offenses. On appeal, Appellant argues that the trial court erred by issuing a jury instruction regarding consciousness of guilt. We affirm.

The trial court thoroughly summarized the factual history underlying this matter. **See** Trial Ct. Op., 6/18/24, at 1-8. Briefly, Appellant was charged

with multiple offenses at three separate docket numbers[1,2] after he unlawfully entered several guest rooms and the front desk of a Quality Inn over a three-day period. ***See id.*** At the time of his arrest, Appellant engaged in a physical altercation with police and attempted to flee from the scene. ***See id.***

On May 15, 2023, the trial court conducted a consolidated jury trial for Docket Nos. 3965-2022 & 3977-2022. The trial court summarized the evidence presented at trial as follows:

> Corporal William Smith ("Smith") of the Morrisville Borough Police Department who was working an overnight shift, was dispatched to the Quality Inn and arrived on scene on May 30, 2022, at 11:47 p.m. to check the area including Pennsylvania Avenue for the black SUV and left at 11:52 p.m. after an unsuccessful search. N.T. 5/17/23, p. 126; N.T. 5/18/23, pp. 19-20. [Front desk agent Christian Selvan called 911 two more times in the early morning of May 31, 2022, at 12:44 a.m. and 3:08 a.m. when he observed the black SUV at the Quality Inn again. N.T. 5/17/23, pp. 128, 130-32. Both times, [Corporal] Smith arrived on scene and thereafter departed the premises when he failed to locate the black SUV because it had departed the Quality Inn before he arrived. N.T. 5/17/23, pp. 130- 35; N.T. 5/18/23, pp. 21-22. Prior to Selvan calling 911 for a fourth time at 3:35 a.m. on May 31, 2022, he observed live surveillance footage of the black SUV returning to the property, and saw two people, a male and a female, exit the black SUV, enter the Quality Inn, and go directly

_____

[1] Specifically, Appellant was charged in connection with violations of the Uniform Firearms Act (VUFA) at Docket No. 4651-2022. At Docket Nos. 3965-2022 and 3977-2022, Appellant was charged with resisting arrest, aggravated assault, burglary, and related offenses based on his unlawful entry at the Quality Inn and his conduct at the time of his arrest.

[2] We note that the instant appeal only concerns Appellant's convictions at 3977-2022. Appellant's challenges pertaining to the remaining docket numbers will be addressed in separate memorandums. Therefore, to the extent the trial court addressed additional issues in its Rule 1925(a) opinion, those claims are not relevant to the instant case.

to room 218. N.T. 5/17/23, pp. 135-36. Selvan also confirmed through the computer system that room 218 was not rented and walked directly to room 218 to determine if he could hear any noise coming from the room. *Id.* at 140. [Corporal] Smith arrived on scene at 3:44 a.m. and walked into the Quality Inn to speak to Selvan. N.T. 5/17/23, p. 143; N.T. 5/18/23, p. 23.

[Corporal] Smith testified that when he arrived at the Quality Inn for the final time on May 31, 2022, Selvan advised him that room 218 was unlawfully occupied and provided him with a key to enter room 218. N.T. 5/18/23, p. 23. Officer Bradlee Smeltzer ("Smeltzer") of the Morrisville Borough Police Department, who assisted with the investigation, met [Corporal] Smith at room 218 and attempted to enter. However the key did not initially work, so [Corporal] Smith knocked on the door several times and covered the peephole to protect his and [Officer] Smeltzer's safety. N.T. 5/17/23, pp. 196-98; N.T. 5/18/23, p. 25. [Officer] Smeltzer then walked to the front desk office to retrieve another key. N.T. 5/17/23, p. 197. When [Officer] Smeltzer returned to room 218, the original key started to work and opened the door, however, [Corporal] Smith and [Officer] Smeltzer were unable to access the room because the secondary lock on top of the door was engaged. N.T. 5/17/23, p. 198; N.T. 5/18/23, p. 26. After attempting to kick in the door, [Appellant] finally opened the door and was advised that he was under arrest. N.T. 5/17/23, pp. 198-99. Video from [Corporal] Smith's body-worn camera, which was activated during the arrest, was admitted into evidence as C-8. Video from [Officer] Smeltzer's body-worn camera, which was activated during the arrest, was admitted into evidence as C-14. [Appellant] advanced towards [Corporal] Smith with his belongings including his glasses, a red Phillies hat, and a hooded sweatshirt, and began pulling on [Corporal] Smith's arm and attempted to proceed down the hallway. N.T. 5/17/23, p. 200; N.T. 5/18/23, p. 27; C-8 Footage (2) at 7:20-7:30; C-14 at 5:39-5:51. [Officer] Smeltzer and [Corporal] Smith then went through the "force continuum," first issuing verbal commands, then using open hand control, and, finally, ordering [Appellant] to the ground to detain him. N.T. 5/17/23, pp. 199-201; N.T. 5/18/23, pp. 27-28. In the continued effort and struggle to arrest [Appellant], [Corporal] Smith, [Officer] Smeltzer and [Appellant] ended up on the ground. N.T. 5/17/23, pp. 199-201; N.T. 5/18/23, p. 28; C-8 Footage (2) at 7:31; C-14 at 5:54. [Corporal] Smith and [Officer] Smeltzer continued to issue verbal commands including, "put your hands behind your back" and "you're under arrest." C-8 Footage (2) at

7:32-7:40; C-14 at 5:58-6:03. As [Appellant] thrashed his body around, kicked and continued to resist the arrest, [Officer] Smeltzer and [Corporal] Smith continued to inform [Appellant] he was under arrest and resorted to different tactics to effectuate the arrest such as utilizing a taser, pepper spray, and an extendable baton. N.T. 5/17/23, pp. 201-202; N.T. 5/18/23, p. 29. During the arrest, [Appellant] bit [Corporal] Smith on his left hand which "skidded" [Corporal] Smith's skin. N.T. 5/18/23, p. 28. Upon review of C-8 and C-14, it appears that [Officer] Smeltzer even anticipated [Appellant's] bite by issuing the demand, "Don't bite [Smith]" immediately followed by [Corporal] Smith's screech in response to the bite. C-8 Footage (3) at 1:45-1:47; C-14 at 8:48-8:50. [Appellant] also bit [Officer] Smeltzer above his knee on his inner right leg which subsequently bruised. N.T. 5/17/23, pp. 199-201, 207. A photo of the bruised bitemark on [Officer] Smeltzer's inner right leg was admitted into evidence as C-15. [Officer] Smeltzer also documented bruising on his shin from effectuating the arrest. N.T. 5/17/23, p. 207. A photo of [Officer] Smeltzer's bruised shin was admitted into evidence as C-16. After several minutes, [Corporal] Smith and [Officer] Smeltzer eventually placed [Appellant] in handcuffs. N.T. 5/18/23, p. 31.

[Corporal] Smith ensured [Appellant's] airway was clear from the pepper spray and then secured room 218 and identified a female in the bathroom. N.T. 5/18/23, pp. 31-32. [Officer] Smeltzer called for assistance and law enforcement subsequently transported [Appellant] to the hospital as [Corporal] Smith believed that was the best course of action. *Id.* at 32-33. [Officer] Smeltzer retrieved [Appellant's] belongings such as his red Phillies hat, glasses, and hooded sweatshirt which fell from his person onto the hallway floor during the arrest. C-14 at 13:24-13:48. Officer Gary Zumpano ("Zumpano") of the Morrisville Borough Police Department who was also dispatched to the Quality Inn as an assisting officer, arrived on scene, and logged photographic evidence and physical evidence collected from [Appellant] including the red Phillies hat, glasses, and hooded sweatshirt. N.T. 5/17/23, pp. 206-207, 245-48. Photographs of the collected evidence were admitted into evidence as C-9 [through] C-13. Physical evidence such as the master key used by [Appellant] in the incident was admitted into evidence as C-3, the hooded sweatshirt was admitted into evidence as C-24, the red Phillies hat was admitted into evidence as C-25, and the glasses were admitted into evidence as C-26. *Id.* at 248-250.

[Officer] Smeltzer felt an "immense burning in [his] hand" from effectuating the arrest and went directly to the emergency room, received an x-ray, and was diagnosed with a broken fourth metacarpal. *Id.* at 206-207. As a result, [Officer] Smeltzer received reconstructive surgery which involved the insertion of a permanent plate and nine screws in his hand. *Id.* at 208. When [Officer] Smeltzer began physical therapy after surgery, he noticed continued pain in his hand, so he received an MRI which revealed that he had a tear in his TFCC, a ligament that wraps around the wrist. *Id.* [Officer] Smeltzer continues to suffer complications such as popping, clicking, and grinding in his wrist daily. *Id.* [Officer] Smeltzer has received cortisone shots every six months and will continue to receive such treatment for the foreseeable future. *Id.* at 209. [Officer] Smeltzer now has a scar on his hand. *Id.* at 213. Photographs of [Officer] Smeltzer's hand post-op were admitted into evidence as C-15 [through] C-23.

Trial Ct. Op., 6/17/24, at 4-8 (some formatting altered).

Ultimately, the jury convicted Appellant of burglary, criminal trespass, receiving stolen property, and theft by unlawful taking[3] at Docket No. 3977-2022. On December 8, 2023, the trial court imposed a sentence of three to six years' incarceration for burglary at Docket No. 3977-2022, and a concurrent term of twelve to twenty-four months' incarceration for Appellant's aggravated assault conviction at Docket No. 3965-2022.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue on appeal:

_____

[3] 18 Pa.C.S. §§ 3502(a)(1)(ii), 3503(a)(1)(ii), 3925(a), and 3921(a), respectively.

Did the trial court err in giving a flight as consciousness of guilt jury instruction which was not supported by the evidence?

Appellant's Brief at 10.

Appellant argues that the trial court erred by providing the jury with instruction on consciousness of guilt where "there was no evidence to support Appellant's flight." *Id.* at 14. Specifically, Appellant notes that although he struggled with police at the time of arrest, he asserts that

> [he] simply did not flee. In fact, he exited the hotel room at gun point and was almost immediately grabbed by police and taken to the ground. He did not attempt to flee out of the hotel room window, nor did he refuse to come out of the room. Instead, he opened the door and exited the room whole holding bags in both hands to find a gun pointed at him.

*Id.* at 18-19. Appellant also argues that there was "simply no basis upon which to infer that Appellant was aware that he was wanted in connection with a crime and that he tried to flee as a result." *Id.* at 19. Therefore, Appellant concludes that "the trial court erred in instructing the jury regrading consciousness of guilt." *Id.*

In reviewing a challenge to jury instructions,

> our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted); *see also Commonwealth v. Sattazahn*, 952 A.2d 640, 668 n.20 (Pa. 2008) (noting that trial courts have wide latitude when crafting jury instructions).[4]

Moreover, this Court has held that a trial court may instruct a jury that a defendant's flight from police may be considered as consciousness of guilt. *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1173-74 (Pa. Super. 2005) (upholding trial court's instruction on the defendant's flight and explaining that "where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt" (citation omitted)).

Here, the trial court addressed Appellant's claim as follows:

"When evaluating the propriety of [the trial court's] jury instructions, the [appellate court] will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citations omitted). The appellate court's scope of review determines "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citations omitted).

A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A

_____

[4] Our Supreme Court has noted that "[t]he Suggested Standard [Criminal] Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014) (citation omitted).

charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Id.*

"There are no magic, talismanic, words which must be uttered in order for a [jury] charge to pass muster. Rather, the [appellate court] must read the charge in its entirety with an eye towards assessing the overall accuracy and clarity of the instructions." **Commonwealth v. Soto**, 693 A.2d 226, 230 (Pa. Super. 1997) [(citations omitted)]. "[The appellate court] will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." **Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted). "Furthermore, even if [a jury] instruction is erroneous, relief is due only when the error is prejudicial." **Commonwealth v. Veon**, 150 A.3d 435, [444] (Pa. 2016) (citation omitted).

\* \* \*

[Appellant] asserts that we erred in giving the jury instruction regarding consciousness of guilt because it was not supported by the evidence. Pennsylvania Suggested Standard Criminal Jury Instruction 3.14, "Consciousness of Guilt, Flight or Concealment as Showing" charge states:

There was evidence, including the testimony of Officer Smeltzer and Corporal Smith, that tended to show that [Appellant] attempted to flee from the police after exiting the hotel room. The credibility, weight and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove the person's consciousness of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends on the facts and circumstances of this case and especially upon motives that

- 8 -

> may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment.
>
> N.T. 5/18/23, pp. 194-95.
>
> This instruction was given at the request of the Commonwealth, and we used the Pa.S.S.J.I. [(Crim)] 3.14. Additionally, based on our sidebar conversations with the District Attorney and Defense Counsel, this court delayed issuing the instruction until all the evidence was presented. N.T. 5/18/23, pp. 4-5, 120-21. As the court held in **Commonwealth v. Cox**, 686 A.2d 1279, 1286 (Pa. 1996), "[a] trial court is under a duty to instruct a jury on the correct legal principles applicable to the facts presented at trial." The evidence including the testimony of [Officer] Smeltzer and [Corporal] Smith, and the body-worn camera footage exhibited on C-8 and C-14 tended to show that [Appellant] attempted to flee from the police after exiting the Quality Inn hotel room. Accordingly, there was a sufficient basis to instruct the jury at the end of trial on the legal principle that [Appellant's] conduct could be considered evidence of his consciousness of guilt. Therefore, [Appellant's] claim is devoid of merit.

Trial Ct. Op. at 11, 14-15 (some formatting altered).

Following our review of the record, we discern no abuse of discretion by the trial court. **See Thomas**, 904 A.2d at 970. The trial court thoroughly addressed Appellant's claim and concluded that he was not entitled to relief. **See** Trial Ct. Op. at 14-15. Therefore, we affirm based on the trial court's analysis of this issue. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/31/2025