**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Joseph F. CARROLL, Appellee.**

Superior Court of Pennsylvania.

Argued July 26, 2007.

Filed Nov. 19, 2007.

Charles A. Bressi, Jr. and James P. Goodman, Asst. Dist. Attys. for Com., appellant.

Ronald R. Pellish, Pottsville, for appellee.

BEFORE: MUSMANNO, BOWES and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is a Commonwealth appeal from the order granting Appellee's pretrial petition for writ of *habeas corpus*. We

\* Retired Senior Judge assigned to the Superior

reverse the order and remand the case for trial.

¶ 2 Following a fatal vehicle accident, Appellee was charged with numerous offenses. After a preliminary hearing, the charges were held for court. Appellee then filed a petition for a writ of *habeas corpus*. The *habeas* court granted the petition and dismissed the charges. The Commonwealth filed this appeal.

### Offenses and Legal Principles

¶ 3 We first review the offenses with which Appellee was charged.

§ 3367. Racing on highways

(a) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"Drag race." The operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to outdistance each other, or the operation of one or more vehicles over a common selected course, from the same point to the same point, for the purpose of comparing the relative speeds or power of acceleration of the vehicle or vehicles within a certain distance or time limit.

"Race." The use of one or more vehicles in an attempt to outgain, outdistance or prevent another vehicle from passing, to arrive at a given destination ahead of another vehicle or vehicles, or to test the physical stamina or endurance of drivers over long distance driving routes.

(b) General rule.—No person shall drive a vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any

Court.

manner participate in any such race, competition, contest, test or exhibition.

75 Pa.C.S.A. § 3367.

### § 3309. Driving on roadways laned for traffic

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

### § 3361. Driving vehicle at safe speed

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

### § 3714. Careless driving

**(a) General rule.**—Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

75 Pa.C.S.A. § 3714(a).

### § 3736. Reckless driving

**(a) General rule.**—Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

75 Pa.C.S.A. § 3736(a).

■ ¶ 4 The phrase "willful and wanton" *means the driver* grossly deviates from ordinary prudence and creates a substantial risk of injury. *Commonwealth v. Greenberg,* 885 A.2d 1025, 1027, 1028 (Pa.Super.2005). The phrase also envisions a callous disregard for the danger created by the driver's conduct. *Id.*

### § 3732. Homicide by vehicle

**(a) Offense.**—Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732.

¶ 5 A person acts recklessly with respect to an element of an offense by consciously disregarding a substantial and unjustifiable risk that the element exists or will result from the person's conduct. 18 Pa. C.S.A. § 302(b)(3). The risk must be of such a nature and degree that, in light of the circumstances known to the person and the nature and intent of the conduct in question, the disregard of that risk involves a gross deviation from the standard of conduct of a reasonable person. *Id.* The term "grossly negligent" is equivalent to the term "reckless." *Commonwealth v.*

*Huggins,* 575 Pa. 395, 836 A.2d 862, 868 (2003).

### § 2504. Involuntary manslaughter

**(a) General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a).

### § 2701. Simple assault

**(a) Offense defined.**—A person is guilty of assault if he:

\* \* \* \* \* \*

(2) negligently causes bodily injury to another with a deadly weapon;

18 Pa.C.S.A. § 2701(a)(2).

### § 2705. Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

¶ 6 In the criminal information, the Commonwealth cited the various summary traffic offenses (*i.e.,* racing, driving on roadways laned for traffic, driving at safe speed, careless driving, and reckless driving) as the underlying acts which, in turn, were part of the misdemeanor and felony counts. For example, the summary traffic offenses were alleged as the conduct constituting a "violation of any law" which violation is an element of homicide by vehicle. *See* 75 Pa.C.S.A. § 3732; Criminal Information, 05/08/06, at Count 1. Similarly, each vehicle summary offense was alleged as "an unlawful act" done in a "reckless or grossly negligent manner" as part of involuntary manslaughter. *See* 18 Pa. C.S.A. § 2504; Criminal Information,

05/08/06, at Count 2. Also, the traffic summaries were set forth as the negligent conduct causing bodily injury in the simple assault count and as the reckless conduct in the charge of recklessly endangering another person (REAP). *See* 18 Pa.C.S.A. §§ 2701(a)(2), 2705; Criminal Information, 05/08/06, at Counts 3–6.

¶ 7 Also relevant to our analysis are several principles concerning *habeas corpus* petitions. A petition for writ of *habeas corpus* is the correct method for a defendant to test whether the Commonwealth has, before trial, established a *prima facie* case. *Commonwealth v. Karlson,* 449 Pa.Super. 378, 674 A.2d 249, 251 (1996). To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. *Commonwealth v. Fowlin,* 450 Pa.Super. 489, 676 A.2d 665, 673 (1996). In an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof. *Id.*

¶ 8 Proof beyond a reasonable doubt is not required at the *habeas* stage, but the Commonwealth's evidence must be such that, if accepted as true, it would justify a trial court in submitting the case to a jury. *Id.* Additionally, in the course of deciding a *habeas* petition, a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth. *Id.* Suspicion and conjecture, however, are unacceptable. *Id.*

¶ 9 On appeal, a trial court's decision to grant or deny a petition for a writ of *habeas corpus* will not be reversed absent an abuse of discretion. *Karlson,* 674 A.2d at 251. An abuse of discretion is not a mere error in judgment. *Commonwealth v. Hardy,* 918 A.2d 766, 776

(Pa.Super.2007). Instead, it involves bias, prejudice, partiality, ill-will, manifest unreasonableness, or a misapplication of the law. *Id.* In contrast, a proper exercise of discretion conforms to the law and the facts of record. *Id.*

### Analysis

¶ 10 Viewed most favorably to the Commonwealth, the evidence from the preliminary hearing and the *habeas* hearing reveals the following facts. Appellee and several friends were traveling along Route 61 North in three vehicles. The road was wet; the evening was misty. Appellee was driving one of the three cars. At various points along the way, all three drivers would pass each other and then move back into their original lane. Additionally, Appellee and at least one of the other two drivers were, at times, traveling well beyond the speed limit, apparently reaching eighty-five miles per hour.

¶ 11 Matthew Pritchard, the driver of one of the vehicles, testified that Appellee and he were "messing around" as they drove. N.T., 07/12/06, at 13. When questioned by the Commonwealth, Pritchard's testimony also included the following exchange:

Q.: Okay. And that messing around, tell us what you mean by messing around?
A.: Having, like having the front of the car ahead of the other one.
Q.: You were trying to have ... You were each trying to have your car—
A.: Yeah.
Q.:—ahead of each other?
A.: Yes.

N.T., 07/12/06, at 13, 14.

¶ 12 Eventually, the three automobiles stopped at a red light near a Getty gasoline station. Pritchard was first in the line of three cars; Appellee was second. When the light turned green, Pritchard proceeded along the right lane of the road. Appellee moved to the legal passing lane. Testimony from Pritchard revealed the following:

Q.: All right. But after that, okay, after that point [the stop light], did you, were you guys doing the same thing, messing around, trying to get ahead, for some distance?
A.: Yes.

N.T., 07/12/06, at 16.

¶ 13 Testimony from the driver of the third car revealed that Appellee began to pass Pritchard. Pritchard then accelerated. At that point, the cars were next to each other in their own lanes. When Pritchard accelerated, he did not pull ahead of Appellee. As Appellee and Pritchard came out of a turn in the road, Pritchard's vehicle slid and hit Appellee's car. Appellee's car then crossed the center median.

¶ 14 According to Pritchard, as the cars approached the turn in the road, he stepped on his brake and slowed his vehicle. Pritchard estimated that, at the point when he braked, he was traveling fifty-five to sixty miles per hour. There was testimony that the speed limit was fifty miles per hour. After braking, Pritchard stepped on the gas as he started going around the turn.

¶ 15 At some point, Pritchard hit a bump and lost control of his car. His vehicle then fishtailed, with at least part of it moving into the passing lane where it struck Appellee's car. Appellee's car then moved into the oncoming traffic lane and collided with an oncoming vehicle. The driver of that vehicle died as a direct result of the crash. The fatal wreck occurred roughly five hundred feet from the Getty light.

¶ 16 Testimony from a state trooper indicated that, on the road, there was a

warning sign indicating the upcoming curve and cautioning drivers not to travel beyond forty miles per hour. The trooper explained that the figure of forty miles per hour was a caution, not an enforceable limit. The speed limit remained at fifty miles per hour.

¶ 17 The *habeas* court found there was *prima facie* evidence that Appellee violated both the driving at safe speed and racing statutes before stopping at the Getty light. Indeed, the court opined that Appellee and Pritchard were "unquestionably" engaged in a speed contest prior to that stop. *Habeas* Court Opinion, 12/29/06, at 19. The record supports those findings. However, the court then explained there was insufficient evidence of any traffic violation by Appellee after he passed the Getty station, and that a violation at that time was critical to a conviction for homicide by vehicle. In this vein, the court determined it would be speculative to infer that a speed contest continued beyond the light merely because one had ensued before it.

¶ 18 Additionally, the court opined that, even if there was evidence of a vehicle code violation when the accident occurred, the record did not support a finding that Appellee acted with the type of recklessness or gross negligence necessary to establish either of the homicide offenses. Moreover, the court reasoned the direct cause of the victim's death was Pritchard's loss of control of his vehicle, not Appellee's conduct.

¶ 19 Based on the foregoing, the *habeas* court concluded there was no *prima facie* case for any of the offenses. In support of its conclusions, the court also noted various deficiencies in the expert testimony from an accident reconstructionist, a state trooper, who testified for the Commonwealth. The trooper could not testify exactly where the impact between Pritchard

and Appellee occurred or what Appellee's speed was at the time of that impact. There was no expert testimony that Appellee was speeding or traveling outside his lane at that time. The expert testimony provided an estimated speed for Appellee as being forty-five to fifty-three miles per hour when he impacted the victim.

¶ 20 We agree that the trooper's expert testimony alone was insufficient to meet the Commonwealth's burden. We also agree the speeding and racing violations prior to the Getty light are not, by themselves, sufficient reasons to infer that Appellee engaged in offenses beyond the light. However, the trooper's testimony and the evidence of the pre-Getty violations do not stand alone.

¶ 21 Pritchard's testimony indicated the "messing around," (*i.e.*, racing) did continue past the light. We understand Pritchard testified he could not remember where Appellee's vehicle was at the moment Pritchard was traveling fifty-five to sixty miles per hour. However, the totality of the testimony, read most favorably to the Commonwealth, leads to the reasonable conclusion that the two vehicles were abreast, or very nearly so, from the Getty light to the point of the fatal accident. This would mean the vehicles were traveling very nearly the same speed. For at least some of that distance, Pritchard was exceeding the speed limit. It is a reasonable inference, therefore, that Appellee, too, was speeding.

¶ 22 In short, the Commonwealth offered evidence that Pritchard and Appellee were traveling very nearly side by side, perhaps at times over the speed limit, on a wet road, approaching a turn which turn had a caution calling for reduced speed, while trying to outpace each other. It is also reasonable to conclude Pritchard lost control of his car because of the race between the two drivers. As a consequence,

those cars collided, Appellee crossed the center of the road into the oncoming lane, and the victim was killed.

¶ 23 Accordingly, the evidence supports the conclusion that Appellee and Pritchard were racing and driving at a speed greater than what was reasonable and prudent under the circumstances—that is, at an unsafe speed—beyond the Getty light. The fact that Appellee and Pritchard engaged in similar behavior just moments earlier, prior to reaching the Getty light, while not alone determinative, further supports an inference that they were speeding and racing at the time of the accident beyond the light. Additionally, a jury could find that such intentional conduct was a gross deviation from ordinary prudence so as to constitute reckless driving. A *fortiori*, Appellee's conduct would also be careless driving. The *habeas* court's ruling to the contrary was error.

¶ 24 The *habeas* court also erred in finding the evidence fell short of the reckless conduct required by the homicide statutes involved in this case. We are satisfied that racing an automobile on a wet roadway near and/or in a turn where lower speeds are warranted can be interpreted to involve a disregard for a substantial and unjustifiable risk that a dangerous, even fatal, crash may occur. Such behavior supports a finding of a gross deviation from the standard of conduct of a reasonable person. Therefore, the Commonwealth's evidence constituted a *prima facie* showing of reckless or grossly negligent conduct as required by the homicide by vehicle and involuntary manslaughter statutes. For the same reasons, we find the Commonwealth made a sufficient showing of simple assault and recklessly endangering another person.

¶ 25 Lastly, we find the court erred in its assessment of causation. Criminal causation is not limited to the sole or immediate causes of injury or death. *Commonwealth v. Nicotra*, 425 Pa.Super. 600, 625 A.2d 1259, 1263 (1993). Rather, a finding of criminal responsibility for causation is proper where a person's conduct is a direct, substantial factor in producing the injury or death even if other factors combined with that conduct to produce the result. *Id.*

¶ 26 The evidence we have discussed may reasonably lead to the conclusion that the racing and other traffic violations in which Appellee and Pritchard took part are what caused Pritchard's car to slide which, in turn, directly led to the fatal accident. Thus, although it was Pritchard's vehicle that first slid, one may conclude that Appellee's role in the race was a direct and substantial factor in the victim's death.

¶ 27 We stress that, in the course of our analysis, we have not weighed the evidence and have made no effort to determine whether the Commonwealth's proof convinces us beyond a reasonable doubt that Appellee's conduct actually did constitute the charged offenses. To the contrary, we have considered the evidence and its reasonable inferences in a manner most favorable to the Commonwealth and have done so only to assess whether a *prima facie* case has been made. Proceeding in that fashion, we find the Commonwealth met its *prima facie* burden at this juncture. Determinations of weight and proof beyond a reasonable doubt, or the lack thereof, remain for the factfinder.

¶ 28 In reversing the *habeas* court's determination, we acknowledge the record shows no bias, partiality, prejudice, or ill-will on the court's part. However, the facts adduced by the Commonwealth did demonstrate the material elements of the offenses. Accordingly, the court's conclusion that the evidence was insufficient to

establish a *prima facie* case did not conform to the record and law and, as such, constituted an abuse of discretion. Accordingly, we reverse the order that granted Appellee's petition for writ of *habeas corpus* and that dismissed the charges. We remand for trial.

¶ 29 Order reversed. Case remanded for trial. Jurisdiction relinquished.