J.A22033/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
:
:
SEAN DONAHUE, :
:
Appellee : No. 2184 MDA 2013

Appeal from the Order Entered October 28, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division No(s).: CP-40-CR-0003501-2012

BEFORE: PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MAY 19, 2015**

The Commonwealth appeals from the order of the Luzerne County Court of Common Pleas granting Appellee Sean Donahue's pretrial petition for writ of *habeas corpus* and dismissing the charges of terroristic threats and harassment.[1] The Commonwealth claims the trial court erred in holding a *prima facie* case on both charges was lacking. We affirm the dismissal of the harassment charge, reverse the dismissal of the terroristic threats charge, and remand this matter to the trial court.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(3).

The allegations pertinent to this appeal were set forth in the affidavit of probable cause, which we reproduce in full.

On 17 August 2012, [Appellee] composed and sent an e-mail to Luzerne County District Attorney Stefanie Salavantis. On 21 August 2012 I, Detective Lieutenant Kenneth Zipovsky received a request from Chief Frank V. DeAndrea Jr. to investigate the threats that were made by [Appellee] in this e-mail. I was also advised by Chief DeAndrea that D.A. Salavantis was concerned and alarmed about the threats that were directed toward her in this e-mail.

In this written communication, [Appellee] threatens that he will essentially engage in a gun fight with police officers, if the District Attorney does not do as he desires. Also in the e-mail, [Appellee] makes the not-so-veiled threat that people will be killed if he does not get the actions that he demands. The text of this e-mail is attached below and is incorporated in this affidavit.

[Appellee] has also continued to send additional e-mails to District Attorney Salavantis since the first communication on 17 August 2012. These additional communications also contain threats of violence toward government employees and police officers. These words and treats have caused terror, and harassed and annoyed Salavantis. Based on the above facts, I respectfully request that [Appellee] be charged with the violations [of terroristic threats and harassment] listed in the Criminal Complaint.

ATTACHED E-MAIL FROM [Appellee] ON 18 AUGUST 2012[2] FOLLOWS—

---

[2] The reference to August 18th in the affiant's preface to Appellee's email appears to be a typographical error as Appellee's copy of the email indicated it was sent on Friday, August 17, 2012. Ex. D-3, Appellee's Pet. for *Habeas Corpus*, 5/30/13. That exhibit also indicated the email was distributed to twenty-one people, including federal, state, and local officials, as well as members of the press, with the subject line "Harassment and Conspiracy Complaints against Corporal Wetzel and others." ***Id.***

Dear Luzerne County District Attorney Stephanie Salevantis,□□[3]The firing squad used by police in South Africa against mine workers demanding higher pay that reported yesterday by CNN, is exactly the kind of threat that was made against me by Corporal Wetzel if I attempt to use the Hazleton Career Link. He made it very clear to me that he will use police power to prevent me from going to that facility.□□I am getting tired of you ignoring me and am no longer asking you to stop ignoring me.  I am now telling you. The idea that law enforcement thinks that it can use force to take away my rights is unacceptable to me.  If you do not respond by telling me that you will investigate the matter, I will prepare myself to face off against a police firing line that will be the result of any attempt by me to use an unemployment office.  I will not allow you to let a corporal get away with threatening me with police power.  If charges are not brought against Corporal Wetzel, Elaine Stalfa, their security guard, Alan Smith, Lucy Ann Veirling and the employees in Harrisburg responsible for illegally denying me access to my rights, I WILL Re-SECURE MY RIGHTS in my capacity as a citizen soldier at large.  Because you have allowed a law enforcement officer to wrongfully threaten me with the wrongful use of force and false arrest, despite my not having committed a crime, I must anticipate that the corporal and the Hazleton Career Link Staff will follow through on their threat to use force to prevent me from accessing an unemployment office and to prevent me from making them do their jobs.  I will prepare myself to defend myself against these threats and police reinforcements.□□As it stands now, the only people trying to avoid going into a courtroom over this matter are the Hazleton Police Department, the Hazleton Career Link Workers, the PA Department of Labor and Industry, the US DOL, the L/S WIB and you, the DA.  The very person who

---

[3] The "□" symbol existed throughout the affidavit of probable cause and apparently correlated with a new line in the original email.

is supposed to intervene and see to it that societies troubles are brought before a jury and judge. Now, your allowing an officer and Career Link workers to use threats of wrongful use of force as a means of taking my rights away triggers the use of the US Second Amendment and Section 13 of the PA Constitution. I consider you to be an illegal oppressive force that has repeatedly threatened the use of both false arrest and physical police force to prevent me from using the Hazleton Career Link and to prevent me from making the Career Link Workers, the Workforce Investment Board Workers and the PA L&I workers do their jobs. I have exhausted all possible peaceful means to resolve this problem and my every attempt has been repeatedly ignored. □□When asked by Judge Zola on February 2, 2011, is anyone preventing me form using the Career Link, Elaine Stalfa and Herbert Alan Smith testified, under oath; "No". Judge Zola said that because I did not attempt to physically go there, I cannot claim that I am being physically kept out of the facility and he further claimed that I misinterpreted the situation. However, I did not misinterpret the situation, Elaine Stalfa and Herbert Alan Smith lied under oath. In so doing, they perjured themselves. The entire hearing took place in front of three Hazleton Police Officers who heard the entire thing. After the hearing was over, I was told by Career Link workers that I had pissed people off and that they were told by their boss, Stalfa and Vierling, that they would be fired if they assisted me in any way in gaining employment. A separate workforce counselor in Philadelphia was told the same thing. Anyone caught assisting me will be fired.□□I was told by Career Link workers that they were backed by the FEDS. I then applied to the Federal DOL to test this theory and was offered a job in Washington that I cannot afford to take. I have been told by a trooper that specific people in government have it in for me and that is all there is to it. I can do nothing other than leave Pennsylvania. I have been told by Career Link Workers several times that I am to be barred from employment in our county and that I must leave and start a new life elsewhere.□□I fought to get

something in writing but the Erica Koub, of Corbett's office, refused to provide any documentation and just insisted that an executive Pennsylvania Decision had been made to deny me access to services. Yudichack's office[4] secured a letter from PA L&I GC who stated the denial of access to federally funded Career Link services is in retaliation for having filed charges against Elaine Stalfa and for contacting the Secretary of L&I, which she feels is not my place to do.□□This is ILLEGAL.  This is Harassment.  This is Official Oppression.  This complaint is falling on deaf ears.  Therefore, I will ring the bell that is heard around the world and your summary denial of my rights will be physically challenged.  I will not stand there and die at the hands of a corporal or any other officers in a firing line intended to keep me from using my rights.□□"Give me Liberty or Give me Death" but not necessarily my own!□□You have until COB Monday Morning to assure me that I will be given access to services, that the Career Link will do its job, that charges will be filed against Corporal Wetzel, Elaine Stalfa, Alan Smith, the Career Link Security guard and both Frank DeAndrea and Rpbert Ferdinand.  You have denied me access to democracy.  You have denied me access to the services available through the executive branch of government, the legislature has denied me access to relief through the legislative branch of government and the judicial branch of government has denied me access to relief through its channels.  You are conspiring to create a circumstance that enables you to get me on something.  The Magistrate says that I must actually physically go to the Career Link and the corporal and Career Link staff say that I will be arrested for something if I attempt to do so.  You then ignore my every email complaint to resolve the matter peacefully and you do so just so that you can put me into a position that forces me to be the physical aggressor and approach a police station or a government office.  That is why you won't act on an

---

[4] Appellee presumably referred to current State Senator, former State Representative John Yudichak.

e-mail. You are trying to set me up and the magistrate is assisting. It is a coordinated conspiracy and Judge Zola is part of it. You are trying to trap me just like you try to trap drug dealers and other criminals. In doing so, you are harassing me.□□PA L&I, Corporal Wetzel, Elaine Stalfa and Vierling have taken upon themselves to label me an enemy of the state of PA and repeatedly conducted their business as if they are backed by the FEDS. Things have been repeatedly altered and moved around in my home, as if someone had entered. Yet, noting was stole, That is intel collection, not burglary.□□Absolutely no one from any level of law enforcement may contact me without a warrant from a judge to do so. There was an article in the paper about an overstuffed arms locker under the control of the Luzerne County Sheriff. I want the sheriff to tell me how I can take ownership of a weapon and protective gear from the county arms locker. I want the FBI to provide me with a vest, kevlar plates and kevlar helmet. I want the FBI or some other federal law enforcement agency to order the Hazleton Police Department and all other local law enforcement to not approach me without first coordinating with federal officers and I want all federal officers to be ordered to inform me anytime local law enforcement intends to act.□□Law Enforcement may only contact me through my attorney and I will only have an attorney when Judge Zola orders that one be appointed to represent me in this string of matters. The FBI may ship the Kevlar items and accompanying webbing and vest via UPS. It may not include electronic surveillance devices, I forbid it. The sheriff may deliver two weapons and associated equipment and ammunition. One weapon must be a US manufactured black rifle, 7.62 and other must be a 45 pistol. The sheriff must also grant me an exception to test-fire the weapons into the ground or into a barrel filled with dirt or water. The sheriff must grant me an exception, allowing me to jog and walk the streets with the gear and weapons when I leave the house and all law enforcement must be told to stay away from me. Law enforcement is bound by the US constitution to

> enable me to defend myself from the wrongful threat of the use of physical force and wrongful arrest and imprisonment. IT IS THEIR DUTY!!!! I EXPECT THEM TO CARRY IT OUT!!!□□□Sincerely,□Sean M. Donahue

Aff. of Probable Cause, 8/21/12, at 1-3.

The Commonwealth filed the criminal complaint charging Appellee with terroristic threats and harassment on August 21, 2012, the day after the deadline referred to by Appellee.  Officers of the Hazelton Police Department also obtained and executed a search warrant for Appellee's home and seized, *inter alia*, several computer devices and a "Winchester Mod 94 30-30" rifle from under a bed.  Receipt/Inventory of Seized Property, 8/21/12, at 1.  Appellee was represented by counsel.  The preliminary hearing in the Magisterial District Court was continued until October 3, 2012.  Although there is no transcript from the preliminary hearing in the record, the Magisterial District Court held the matter for court on October 3rd and filed its papers in the Court of Common Pleas on October 5th.  On October 22nd, the Office of the Pennsylvania Attorney General filed the criminal information in this case.

New counsel from the Office of the Public Defender entered an appearance for Appellee on January 9, 2013.  Appellee sent the trial court *pro se* motions, which included motions to dismiss counsel.  On May 15, 2013, present counsel entered his appearance on Appellee's behalf.

On May 30, 2013, Appellee, through counsel, filed a petition for writ of *habeas corpus* seeking dismissal of the charges.  On June 10th, Appellee

filed omnibus pretrial motion, including a motion for recusal of the presiding judge. The following day, the presiding judge recused himself and a specially appointed judge was assigned the matter. On October 2, 2013, the trial court entered an order cancelling a hearing on Appellee's motions and indicating the parties agreed to have the pretrial motions decided based on "the pleadings on the record" and the parties' briefs. Order, 10/2/13, at ¶¶ 1, 4. On October 28th, the court dismissed the charges against Appellee.

The Commonwealth filed a timely notice of appeal and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement. The trial court filed a Rule 1925(a) opinion holding that the Commonwealth failed to establish Appellee engaged in a course of conduct necessary to sustain the harassment charge. Trial Ct. Op., 3/17/14, at 3. The court also opined it properly dismissed the terroristic threats charge because the Commonwealth did not establish Appellee intended to terrorize the complainant. *Id.* This appeal followed.

The Commonwealth presents a single question for our review: "Whether the trial court abused its discretion by dismissing the charges where [Appellee's] threatening email to an elected district attorney established a *prima facie* case of terroristic threats and summary harassment?" Commonwealth's Brief at 3. We reorder and summarize the Commonwealth's arguments on both charges.

As to the harassment charge, the Commonwealth suggests the affidavit of probable cause provided a basis to infer Appellee sent the complainant multiple threatening emails. *Id.* at 17. It notes Appellee complained in his email that the complainant repeatedly ignored his requests. *Id.* It further contends the affiant alleged Appellee sent the complainant multiple emails communicating threats of violence. *Id.* The Commonwealth thus asserts the trial court misconstrued the record when it concluded Appellee's single email did not establish a course of conduct. *Id.* at 17. We disagree and affirm that part of the court's order dismissing the charge of harassment.

As to the terroristic threats charge, the Commonwealth argues the trial court erred in concluding Appellee did not intend to terrorize the complainant. *Id.* at 14. The Commonwealth emphasizes Appellee demanded the complainant take unrealistic actions, including compelling CareerLink to provide unemployment services, charging and arresting several individuals, and providing him with firearms and protective equipment. *Id.* at 13-14 & n.6. It contends Appellee issued the following ultimatums, which we have reproduced in bold in context of the email:

- "If you do not respond by telling me that you will investigate the matter, **I will prepare myself to face off against a police firing line** that will be the result of any attempt by me to use an unemployment office."

- " If charges are not brought . . ., **I WILL Re-SECURE MY RIGHTS in my capacity as a citizen soldier at large**."

- "I must anticipate that the corporal and the Hazleton Career Link Staff will follow through on their threat to use force to prevent me from accessing an unemployment office and to prevent me from making them do their jobs. **I will prepare myself to defend myself against these threats and police reinforcements**."

- ". . . your allowing an officer and Career Link workers to use threats of wrongful use of force as a means of taking my rights away **triggers the use of the US Second Amendment and Section 13 of the PA Constitution**. **I consider you to be an illegal oppressive force** that has repeatedly threatened the use of both false arrest and physical police force to prevent me from using the Hazleton Career Link and to prevent me from making the Career Link Workers, the Workforce Investment Board Workers and the PA L&I workers do their jobs. **I have exhausted all possible peaceful means to resolve this problem** and my every attempt has been repeatedly ignored."

- "Therefore, I will ring the bell that is heard around the world and **your summary denial of my rights will be physically challenged**. I will not stand there and die at the hands of a corporal or any other officers in a firing line intended to keep me from using my rights.□□[`]**Give me Liberty or Give me Death**[']** but not necessarily my own!**"

- "You then ignore my every email complaint to resolve the matter peacefully and **you do so just so that you can put me into a position that forces me to be the physical aggressor and approach a police station or a government office**."

Commonwealth's Brief at 13 & n.3; Aff. of Probable Cause.

According to the Commonwealth, the affidavit of probable cause thus established adequate evidence to find Appellee made unreasonable demands and deliberate threats to commit crimes of violence. ***Id.*** at 14. This

evidence would also permit a fact-finder to conclude Appellee intended to terrorize the complainant. *Id.* Alternatively, the Commonwealth argues the affidavit of probable cause established Appellee recklessly caused terror because he failed to recognize his statements would provoke fear. *Id.* at 14-15. Consequently, the Commonwealth asserts it established a *prima facie* case of terroristic threats. We find relief is due and reverse that part of the trial court's order dismissing the charge of terroristic threats.

Our standard and scope of review is as follows:

> When reviewing a trial court's decision to grant a *habeas corpus* petition, we will not reverse the trial court's decision absent a manifest abuse of discretion. In order to constitute an abuse of discretion, the record must disclose that the trial court exercised manifestly unreasonable judgment or based its decision on ill will, bias or prejudice. Furthermore, our scope of review is limited to determining whether the Commonwealth has established a *prima facie* case.

***Commonwealth v. Heckman***, 66 A.3d 765, 768 (Pa. Super.) (citation omitted), *appeal denied*, 83 A.3d 414 (Pa. 2013).

> A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.

In determining the presence or absence of a *prima facie* case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

***Commonwealth v. Keller***, 823 A.2d 1004, 1010-11 (Pa. Super. 2003)

(citations and quotation marks omitted).

Furthermore,

the Commonwealth must produce evidence of every material element of the charged offense(s) . . . . In an effort to meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

***Commonwealth v. Carroll***, 936 A.2d 1148, 1152 (Pa. Super. 2007)

(citation omitted). Hearsay may be considered by the trial court when determining whether a *prima facie* case exists. ***Commonwealth v. Jackson***, 849 A.2d 1254, 1257 (Pa. Super. 2004). However, hearsay alone cannot be the basis for establishing a *prima facie* case. ***Id.***

Section 2709 of the Crimes Code defines harassment, in relevant, as follows:

**(a) Offense defined.**—A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

\*   \*   \*

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

\*   \*   \*

- 12 -

> [**(f) Definitions.—**] "Course of conduct." A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct[.]

18 Pa.C.S. § 2709(a)(3), (f).

To establish harassment under subsection (a)(3), the Commonwealth must establish the defendant acted with "specific intent" to harass, annoy, or alarm another. ***Commonwealth v. Battaglia***, 725 A.2d 192, 194 (Pa. Super. 1999) (citation omitted). "A person acts intentionally" when "it is his conscious object . . . to cause such a result." 18 Pa.C.S. § 302(b)(1)(i). "An intent to harass may be inferred from the totality of the circumstances." ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013).

Because Section 2709(a)(3) requires a course of conduct, "a single act will not support a conviction." ***Battaglia***, 725 A.2d at 194 (citation omitted). Moreover, "the conduct must be of a non-legitimate nature[.]" ***Id.***

Preliminarily, we are compelled to comment upon the sparse nature of the record. The Commonwealth, when responding to Appellee's petition for *habeas corpus* relief, did not refer to, or produce, the notes of testimony from the preliminary hearing or copies of Appellee's other communications to the complainant. Its brief in opposition to Appellee's pretrial motions contained boilerplate responses. Furthermore, the Commonwealth, as the appellant in this appeal, did not seek to supplement the record in this Court

or aver additional evidence was available. Accordingly, our scope of review is limited to the allegations set forth in the affidavit of probable cause.

Instantly, Appellee's email, which was reproduced in the affidavit of probable cause, contained numerous statements, which a fact-finder could construe as intending to cause the complainant alarm.[5] The affiant further alleged, "[Appellee] has also continued to send additional e-mails to District Attorney Salavantis since the first communication on 17 August 2012. These additional communications also contain threats of violence toward government employees and police officers." Aff. of Probable Cause. However, the affiant's description of the contents of the additional emails was hearsay and potentially conveyed an opinion regarding an original writing that could intrude upon the fact-finder's province if presented at trial. *See Commonwealth v. Lewis*, 623 A.2d 355, 357 (Pa. Super. 1993)

In light of the foregoing record, we discern no basis upon which to disturb the trial court's conclusion the Commonwealth failed to proffer evidence to sustain the harassment charge under Section 2709(a)(3). The Commonwealth bore the burden of adducing evidence that Appellee engaged in a course of conduct or repeatedly committed acts which serve no

---

[5] *See* Aff. of Probable Cause (stating, "I will prepare myself to face off against a police firing line[,]" indicating Appellee "exhausted all possible peaceful means[,]" stating, "[Y]our summary denial of my rights will be physically challenged[,]" and alleging complainant "put [him] into a position that forces [him] to be the physical aggressor and approach a police station or a government office").

legitimate purpose. **See** 18 Pa.C.S. § 2709(a)(3); **Carroll**, 936 A.2d at 1152; **Battaglia**, 725 A.2d at 194. However, it elected to rely upon questionable "evidence" requiring speculation that all of Appellee's communications were similar to the example in the affidavit of probable cause.[6] **See Keller**, 823 A.2d at 1010. Accordingly, we affirm that portion of the order dismissing the harassment charge.

With respect to the terroristic threats charge, Section 2706 of the Crimes Code states, in relevant part:

> ### § 2706.  Terroristic threats
>
> **(a) Offense defined.—**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> > (1) **commit any crime of violence with intent to terrorize another**[.]

18 Pa.C.S. § 2706(a)(1) (emphasis added).

This Court has described the elements of terroristic threats as follows:

> [T]he Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the

---

[6] We note Appellee's petition for *habeas corpus* relief also asked the trial court to balance the alleged invasions of the complainant's sense of security with Appellee's right to petition for redress and free expression. **See** Appellee's Br. in Support of Pet. for *Habeas Corpus*, 6/7/13, at 1; **See generally Commonwealth v. Bender**, 375 A.2d 354, 359 (Pa. Super. 1977) ("We should be extremely reluctant to infer a criminal intent to harass solely from the filing of complaints with appropriate government agencies and the making of telephone calls during regular office hours lest we impermissibly chill a citizen's constitutional freedoms"). Thus, the Commonwealth's failure to present Appellee's additional emails is especially puzzling.

threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror.[7] The harm sought to be avoided is the psychological distress that follows an invasion of the victim's sense of personal security. Consequently, neither the defendant's ability to carry out the threat nor the victim's belief that it will be carried out is an essential element of the crime. Similarly, it is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement. Thus, a direct communication between the defendant and the victim is not required to establish the crime.

*Commonwealth v. Sinnott*, 976 A.2d 1184, 1188 (Pa. Super. 2009) (citations and punctuation omitted), *rev'd on other grounds*, 30 A.3d 1105 (Pa. 2011).

"The purpose of [Section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." *Commonwealth v. Campbell*,

---

[7] This passage—which indicates a defendant may be convicted of terroristic threats based on intent or reckless disregard—relied on case law interpreting the former version of Section 2706(a). However, Section 2706(a) was amended on December 15, 1999. Under the current version of Section 2706, subsection (a)(1) speaks to a threat "to commit a crime of violence with intent to terrorize[.]" 18 Pa.C.S. § 2706(a)(1). Subsection (a)(3) covers threats, which, *inter alia*, "cause terror or serious public inconvenience with reckless disregard of the risk causing such terror or inconvenience." 18 Pa.C.S. § 2706(a) (3). Instantly, we need not address the difference between our former case law and the present version of the statute, as our review will focus on whether the Commonwealth adduced adequate evidence to show Appellee acted with the intent to terrorize.

625 A.2d 1215, 1218 (Pa. Super. 1993) (citations omitted). However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000).

We do not quarrel with the trial court's suggestion that the email's principal purpose was to express Appellee's grievance over his alleged inability to access unemployment services. Nevertheless, it is undisputed that Appellee used violent imagery[8] and referred to possible physical confrontations with government officials.[9] Of particular significance, Appellee alluded to a government conspiracy and his right to use force against the conspiracy.[10]

In light of the foregoing, and mindful of our standard of review, we conclude a reasonable fact-finder could find Appellee harbored an actual fear

---

[8] Aff. of Probable Cause (quoting Appellee's reference to "[t]he firing squad used by police in South Africa").

[9] *Id.* (indicating Appellee's belief he will "face off against a police firing line" and will be "physical aggressor and approach a police station or a government office").

[10] *Id.* (stating, "I WILL Re-SECURE MY RIGHTS in my capacity as a citizen soldier at large[,]" declaring, "[T]hreats of wrongful use of force as a means of taking my rights away triggers the use of the US Second Amendment and Section 13 of the PA Constitution[,]" and suggesting, "You [the complainant] are conspiring to create a circumstance that enables you to get me on something . . . You are trying to set me up and the magistrate is assisting. It is a coordinated conspiracy and Judge Zola is part of it . . . You are trying to trap me just like you try to trap drug dealers and other criminals . . . In doing so, you are harassing me").

the alleged conspiracy threatened his life. Similarly, the evidence would sustain a finding Appellee believed he was entitled to use force against government officials and would do so imminently. Moreover, a fact-finder could conclude Appellee purposefully expressed these beliefs to threaten crimes of violence, if the complainant did not meet his demands. Lastly, the email, as a whole, could reasonably be read as a deliberate and calculated threat that evinced Appellee's intent to terrorize. Thus, we cannot agree with the trial court that Appellee's email did not establish a *prima facie* case of terroristic threats under Section 2706(a)(1). That Appellee raised a grievance with an elected official did not preclude the possibility that a fact-finder could reasonably find Appellee also expressed a "true threat" and intended to terrorize to achieve his ends.[11]

In sum, we affirm that part of the trial court's order dismissing the harassment charge, but reverse that part of the order dismissing the

---

[11] ***See generally Commonwealth v. Baker***, 722 A.2d 718, 721-22 (Pa. Super. 1998) ("When engaged in a constitutionally protected activity of the fundamental nature of freedom of speech, we must exercise restraint in prohibiting the activity lest we destroy the right. However, the right to free speech is not absolute, and certain well-defined, limited classes of speech may be prevented and punished without raising constitutional problems. Lewd, obscene, profane, libelous and insulting or fighting words those which by their very utterance inflict injury or tend to incite an immediate breach of peace are not constitutionally protected. Only true threats fall within that group of expressions, such as fighting words, which are not constitutionally protected pure speech. A true threat is one which on its face and in the circumstances in which it is made is so unequivocal, unconditionally immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." (citations and quotation marks omitted)).

terroristic threats charge. Accordingly, we remand this matter to the trial court for further proceedings.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2015