J-S68005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JUSTIN P. GREENWOOD | : | |
| | : | |
| Appellant | : | No. 11 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 6, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002899-2017

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JANUARY 2, 2020**

Justin P. Greenwood (Greenwood) appeals from the judgment of sentence imposed by the Court of Common Pleas of Erie County (trial court) after his jury conviction of Firearms Not To Be Carried Without a License.[1]  We affirm.

**I.**

We take the background facts and procedural history from the trial court's May 14, 2019 opinion and our independent review of the certified record.  At approximately midnight on September 9, 2017, City of Erie Police Sergeant James D. Bielak, Jr. and Patrolman Ira Bush were conducting routine traffic patrol in their patrol car when the vehicle driven by Greenwood drew their attention.  (***See*** N.T.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1).

Trial, 9/10/18, at 20-21, 30). The vehicle was a tall or lifted pickup truck with dark tinted windows that the officers could not see inside. (*See id.* at 30, 36). A run of the license plate revealed that the registration was suspended due to insurance cancellation. (*See id.* at 21). When they stopped the vehicle, Greenwood rolled down his window and provided Officer Bush his vehicle information. (*See id.* at 30-31). When Officer Bush ran the information, it revealed that he had dealt with Greenwood before in a domestic dispute and remembered that that incident involved a firearm. (*See id.* at 31). For safety purposes, Officer Bush asked Greenwood to step out of the vehicle, patted him down, and discovered a knife. (*See id.* at 21, 31). When the officers asked Greenwood if he had any weapons in his vehicle, he became nervous, asking the officers why they needed to check. (*See id.* at 21, 34). Officer Bush performed a wingspan search of the vehicle to ensure there were no other weapons inside based on his previous experience with him. (*See id.* at 22, 32).

Before he performed the search, Officer Bush asked the front seat passenger, Terrah Zablotny, to exit the truck. Zablotny was calm and did not ask any questions. (*See id.* at 22, 34). She had a purse with her in the front seat. (*See id.*). Officer Bush asked Zablotny if she had left a firearm in the vehicle and she said she neither had one nor left one there. (*See id.* at 34).

He then performed the search and saw a firearm[2] sticking out of the map pocket on the rear of the passenger's seat. (*See id.* at 32, 35). The purpose of the pocket was for easy access by the driver of the vehicle and would have been difficult for a passenger to access because it would have required the person "to reach all the way around behind herself and get [her] hand down into the pocket to access it." (*Id.* at 36; *see id.* at 32, 35-36). Officer Bush did not see any items that were indicative of a female in the truck other than her purse. (*See id.* at 34). After discovering the gun, Officer Bush spoke to Greenwood, who indicated that he did not have a permit to carry a weapon,[3] but that the gun was not his. (*See id.* at 33). Although Greenwood appeared agitated, Officer Bush stated that he did not seem surprised by the gun's discovery. (*See id.* at 33-34).

On the same date, the Commonwealth charged Greenwood with Firearms Not To Be Carried Without a License. Greenwood filed an omnibus pre-trial motion that included a Motion for Writ of *Habeas Corpus* and a Motion for Suppression of Evidence that the trial court denied after a hearing. At the conclusion of trial, the jury convicted Greenwood of the previously mentioned charge. On November 6,

---

[2] A magazine was inserted in the gun and a later inspection revealed that there was a round in the chamber. (*See* N.T. Trial, 9/10/18, at 37-38). The parties stipulated that testing showed the gun was functional and no DNA or fingerprints were found on it. (*See id.* at 40).

[3] The Pennsylvania State Police Information and Certification obtained subsequent to Greenwood's arrest confirmed that he did not have a valid license to carry a firearm. (*See* N.T. Trial, 9/10/18, at 37).

2018, the trial court sentenced him to a term of not less than two nor more than five years' incarceration. The court denied Greenwood's post-sentence motion and motion for modification of sentence on November 30, 2018. Greenwood timely appealed. He and the court complied with Rule 1925. *See* Pa.R.A.P. 1925.

On appeal, Greenwood challenges the sufficiency and weight of the evidence supporting his conviction, the trial court's denial of his pre-trial motions, and the discretionary aspects of his sentence. (*See* Greenwood's Brief, at i, 2, 5-9).

## II.

## A.

As to Greenwood's challenge to the sufficiency[4] and weight of the evidence,[5] Section 6106 of the Crimes Code, Firearms Not To Be Carried Without a License,

---

[4] "Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the Commonwealth as verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." *Commonwealth v. Lineman*, ___ A.3d ___, 2019 WL 4399877, *2 (Pa. Super. filed Sept. 16, 2019) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Id.* (citation omitted). "Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because the factfinder is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

[5] "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis omitted). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration

provides, in pertinent part, "any person who carries a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). "[T]o convict a defendant for carrying a firearm without a license, the Commonwealth must prove: that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business." *Commonwealth v. Hewlett*, 189 A.3d 1004, 1009 (Pa. Super. 2018), *appeal denied*, 197 A.3d 1176 (Pa. 2018) (citation omitted).

Sergeant Bielak and Officer Bush testified that Greenwood acted nervous after Officer Bush patted him down and asked if he had any weapons in the vehicle. (*See* N.T. Trial, 9/10/18, at 21, 34). Greenwood did not seem surprised that the officers found the weapon, which was inside a pocket behind the passenger's seat and accessible from the driver's seat. (*See id.* at 33-34, 36). He admitted that he did not have a license to carry the firearm. (*See id.* at 33). Greenwood, however, testified that the weapon was Zablotny's, not his, and defense counsel argued all discrepancies and inconsistencies in the evidence. (*See* N.T. Trial, 9/11/18, at 52-57).

---

to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* (citations omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Based on the foregoing, Greenwood argues that the evidence was insufficient because the gun was not found in his possession, his fingerprints and DNA were not found on it and he testified that his passenger owned the weapon. These claims fail. First, the section of the statute under which he was convicted expressly provides for illegally carrying a firearm in a vehicle, and he was the owner and driver of the vehicle in which the gun was found within arm's reach from the driver's seat. **See** 18 Pa.C.S. § 6106(a)(1). Futhermore, the Commonwealth was not required to establish that Greenwood's fingerprints or DNA be on the firearm for a conviction. **See Hewlett**, **supra** at 1009 (describing elements the Commonwealth must prove for conviction).

Finally, although he testified that his passenger owned the weapon, the Commonwealth was not required to call her as a witness to establish its case. **See Lineman**, **supra** at *2 (observing that a mere conflict in testimony does not render the evidence insufficient because it is for the jury to believe all, some, or none of the evidence presented, and the Commonwealth may establish all elements of the crime based on circumstantial evidence).

As correctly pointed out by the trial court, this case came down to one of credibility, and it was for the jury to decide whether to believe the officers or Greenwood. (**See** Trial Ct. Op., at 4-5); **see also Lineman**, **supra** at *2. When viewed in the light most favorable to the Commonwealth as verdict winner, the trial court properly found that it introduced sufficient evidence to sustain all elements for

the conviction of carrying a firearm without a license. *See Lineman*, *supra* at *2; *Hewlett*, *supra* at 1009. Greenwood's sufficiency argument fails.

Similarly, Greenwood's claim that the conviction was against the weight of the evidence does not merit relief. Greenwood does not offer a separate argument for this contention, but instead argues it contemporaneously with his sufficiency allegation. (*See* Greenwood's Brief, at 8-9). However, as we stated above, this case came down to one of credibility, which was for the jury to decide, and we will not reweigh the evidence. The trial court found that the verdict did not shock one's sense of justice where it was sufficient to establish each element of the crime. (*See* Trial Ct. Op., at 5). We discern no abuse of discretion. Greenwood's weight claim fails.

## B.

In his second issue, Greenwood claims that the trial court erred in denying his pretrial motions for writ of *habeas corpus.* However, due to deficiencies in his brief, he has waived this issue.[6]

_____

[6] A pretrial petition for a writ of habeas corpus is to examine the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth, and on appeal, as a question of law, our review is plenary. **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111-12 (Pa. Super. 2016). In the pretrial setting, the focus of a habeas corpus hearing is to determine whether sufficient evidence exists to hold a defendant in government custody until he may be brought to trial. **Commonwealth v. Fowlin**, 676 A.2d 665 (Pa. Super. 1996). The habeas corpus petition is similar in purpose to a preliminary hearing. **Id.** In making a pretrial determination, a court is not limited to reviewing the evidence presented at a preliminary hearing. **Id.** The Commonwealth may also present additional evidence at the habeas corpus stage in an attempt to establish a prima

It is well-settled that "[w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012) (citations omitted); *see also* Pa.R.A.P. 2119(a), (c). "We will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *In re R.D.*, *supra* at 674 (citation and internal quotation marks omitted); *see also* Pa.R.A.P. 2101 (if the defects in the brief are substantial, the appeal or other matter may be quashed or dismissed).

Greenwood claims that the court should have granted the motion for writ of *habeas corpus* because the Commonwealth failed to establish a *prima facie* case against him. (*See* Greenwood's Brief, at 10). He maintains that the Commonwealth merely established that he was driving a vehicle with an expired registration, that the gun was not found in his "direct possession," "the passenger admitted at the preliminary hearing to be the possessor of it," and there was no DNA or fingerprint

_____

facie case that a crime has been committed and that the accused is the person who committed the crime. *Id.* A pretrial petition for a writ of habeas corpus is the procedure for testing whether the Commonwealth has furnished prima facie evidence against the defendant at his preliminary hearing. *Commonwealth v. Carroll*, 936 A.2d 1148 (Pa. Super. 2007).

test results available at the time of the motion hearing. (*Id.* at 9). However, other than those bald allegations, Greenwood fails to provide any argument, citations to the hearing transcript, or legal citation about writs of *habeas corpus* to support his claim. (*See id.* at 9-13). Therefore, this issue is waived for our review. *See In re R.D.*, *supra* at 674 (waiving issue for appellant's failure to provide meaningful discussion).

## C.

We turn to Greenwood's claim that the trial court erred in denying his motion to suppress.[7] Greenwood argues that the stop of his vehicle was unsupported by either reasonable suspicion or probable cause where police did not obtain the registration information until after the police pulled over his truck. (*See* Greenwood's Brief, at 10-11). He also maintains that the subsequent search of the vehicle was unconstitutional because the officers did not have probable cause since

_____

[7] "An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Bernard*, ___ A.3d ___, 2019 WL 4180655, at *3 (Pa. Super. filed Sept. 4, 2019) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* (citation omitted). "Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous." *Id.* (citation omitted).

they did not believe criminal activity was afoot and did not have reasonable suspicion for a protective weapons search.  (*See id.* at 11-13).

> Traffic stops based on a reasonable suspicion:  either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[8] must serve a stated investigatory purpose.  For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop.  Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense.

*Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) (case citations and internal quotation marks omitted).

Here, the trial court found that "[u]nder the totality of the circumstances the officer had reasonable suspicion to stop [Greenwood] for a suspected violation of the Motor Vehicle Code."  (Trial Court Opinion, 1/15/18, at 4).  The court further observed that "[t]he patdown of [Greenwood] was appropriate" where he "reasonably believed officer safety was threatened" based on his limited visibility into the vehicle due to the heavily tinted windows, the fact that the registration was

_____

[8] Section 6308(b) of the Pennsylvania Motor Vehicle Code provides:

> **(b) Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

suspended, that it was a high-crime area, his previous experience with Greenwood and Greenwood's argumentative attitude. (*Id.* at 5). Finally, the trial court found that the recovery of the weapon from the truck was proper where it was observed in plain view, and any protective sweep of the interior of the vehicle was appropriate due to Officer Bush's safety concerns. (*See id.*). The court concluded that based upon the specific facts articulated by the officer, together with the rational inferences drawn from those facts, "Officer Bush was reasonably warranted in believing [Greenwood] posed a danger." (*Id.* at 5). We agree.

The testimony at the pre-trial suppression hearing established that Officer Bush was patrolling in a high crime area when he observed heavily tinted windows on a raised truck. He ran the license plate, which came back as having a suspended registration status due to the cancellation of insurance. (*See* N.T. Hearing, 2/27/18, at 8-10, 25, 27, 29-30). Based on this information, Officer Bush initiated a traffic stop. (*See id.* at 11). Following the stop, the officer used information from Greenwood's driver's license to run his name. As a result, the officer learned there was an active Protection From Abuse order on Greenwood, and that he had been a suspect in a February 2016 firearm incident that arose during a domestic dispute. (*See id.* at 13-19). At this point, Officer Bush remembered that he had been involved as a backup officer in that incident and that it left him with the distinct impression that Greenwood was someone "to be careful with." (*Id.* at 20; *see id.* at 13-20).

Based on this previous experience in general, and with Greenwood as someone to be concerned about specifically, Officer Bush's inability to see inside his vehicle due to the heavily tinted windows, the time of day, the lighting conditions, and the high-crime nature of the area, he requested that Greenwood exit the vehicle for officer safety reasons. (*See id.* at 21-22, 36, 40-41). Greenwood complied, argued with the officers, but eventually permitted Officer Bush and his partner to conduct a pat-down search. At this point, the officers discovered a knife tucked in the waistband of Greenwood's sweatpants. (*See id.* at 22, 41). After removing the passenger from the truck, Officer Bush looked inside it to ensure that Greenwood would not have easy access to a weapon once he returned to the vehicle to await the citation's issuance. (*See id.* at 22, 38). Officer Bush observed a firearm sticking out of the map pocket behind the passenger's seat in plain view, within easy reach of an individual sitting in the driver's seat. (*See id.* at 22, 38-39). As a result, Greenwood was charged with the firearm's offense.

After our independent consideration of the foregoing testimony, we conclude that it supports the court's findings of fact and legal conclusions drawn therefrom. *See Bernard*, *supra* at \*3. Hence, the court properly denied Greenwood's motion to suppress and this issue lacks merit.

### D.

Greenwood also argues that his sentence was manifestly excessive, unreasonable and not individualized as required by law. (*See* Greenwood's Brief, at 13-14).

Greenwood's issue challenges the discretionary aspects of his sentence. It is well-settled that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right." ***Commonwealth v. Bynum-Hamilton***, 135 A.3d 179, 184 (Pa. Super. 2016) (citation omitted). An appellant must invoke this Court's jurisdiction by filing a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; raising the issue in a post-sentence motion or at sentencing, ***see*** Pa.R.Crim.P. 720; and including a Rule 2119(f) statement in his brief that raises a substantial question. ***See Bynum-Hamilton***, ***supra*** at 184.

When explaining the substantial question requirement, this Court has said:

> [T]he appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, [that] the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits.

***Commonwealth v. Hill***, 66 A.3d 365, 368 (Pa. Super. 2013) (citations omitted) (emphases in original).

In this case, Greenwood filed a post-sentence motion challenging his sentence and a timely notice of appeal. He also has included a Rule 2119(f) statement in his brief. (***See*** Greenwood's Brief, at 3-4). He maintains that his sentence was manifestly excessive and unreasonable because it was not individualized to meet his needs. (***See id.*** at 4). This raises a substantial question and we will consider its

- 13 -

merits. *See Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016)

(claim that court failed to consider individualized needs raises substantial question).[9]

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation.

*Commonwealth v. Hill*, 210 A.3d 1104, 1116-17 (Pa. Super. 2019) (quotation

marks and citations omitted).

"When [] the trial court has the benefit of a pre-sentence report, we presume

that the court was aware of relevant information regarding the defendant's character

and weighed those considerations along with any mitigating factors."

*Commonwealth v. Sexton*, ___ A.3d ___, 2019 WL 5540999, at *11 (Pa. Super.

filed Oct. 28, 2019) (citation omitted).

Here, prior to sentencing Greenwood, the court heard the argument of defense

counsel as to mitigating circumstances such as the fact that Greenwood was not

involved in any other criminal activity at the time of the gun's discovery, that his

criminal record reflects that all of his prior convictions were years old, that he was

gainfully employed, and that he was incarcerated for approximately fourteen months

relative to his arrest in this case and for a detainer that was on him for another

conviction. (*See* N.T. Sentencing, 11/08/19, at 9-10). Greenwood also took the

---

[9] "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa. Super. 2018), *appeal denied*, 202 A.3d 41 (Pa. 2019) (citation omitted).

opportunity to address the court and advised that he could be a productive citizen if given the opportunity. (*See id.* at 11). The court also heard the argument from the Commonwealth's counsel that this was the fifth time probation would be revoked for his prior offense due to an arrest. (*See id.*).

After considering all of the foregoing, the court imposed a mitigated range sentence of not less than twenty-four nor more than sixty months' incarceration and made Greenwood boot camp eligible "which gives [him] a chance to shave some time off that mitigated range sentence" [depending on] how well [he] perform[s]." (*Id.* at 12). Additionally, the court had the benefit of a pre-sentence investigation, so we presume that it was aware of all relevant information about Greenwood's character and weighed it accordingly. *See Sexton*, *supra* at *11.

Based on the foregoing and our independent review of the sentencing hearing transcript, we discern no manifest abuse of discretion in the court's imposition of a mitigated range sentence. *See Edwards*, *supra* at 637.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2020

- 15 -